UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **JUSTIN O'BRIEN,** *on behalf of himself and all others similarly situated* | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :Civil Action No. 1:23-cv-00491-RDA-LRV <br> : |
| **SMOOTHSTACK, INC.**, | : <br> : |
| Defendant. | : <br> : |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................................................... 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 555 L.Ed.2d 929 (2007) ........................................................................................ 3

*TransUnion LLC v. Ramirez*,
210 L. Ed. 2d 568, 141 S. Ct. 2190, 2203 (2021) ............................................................................. 4

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 339, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016)
............................................................................................................................................... 7,8

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63, 67, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010) ............................................ 7,8

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
No. 1:13-CV-1353 GBL/JFA, 2014 WL 1911884, at *10 (E.D. Va. May 13, 2014 ...................... 8

*Garey v. James S. Farrin*, P.C.,
35 F.4th 917, 922 (4th Cir. 2022) ................................................................................................... 9

*Ross v. Reed*,
719 F.2d 689, 694 (4th Cir. 1983) ................................................................................................... 9

**Statutes**

**Rules**

Fed. R. Civ. P. 12(b)(6) and Rule 7 ............................................................................................... 3

COMES NOW, Defendant Smoothstack, Inc. ("Smoothstack" or "Defendant"), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and Rule 7 of this Court's Local Civil Rules, and hereby submits this Memorandum in Support of Defendant's Motion to Dismiss and states as follows:

## I. BACKGROUND

Smoothstack operates an information technology (IT) training and placement program that provides career opportunities to aspiring software engineers. Individuals that participate in this program, who often have no prior experience in the industry, receive the training and skills necessary to launch a career in the IT industry. Upon completion of the program, these individuals are then placed with clients, often Fortune 500 companies, to begin their new careers.

As identified in the Complaint, prior to joining Smoothstack in April 2020, Justin O'Brien ("O'Brien" or "Plaintiff") worked a "low-paying job at a call center." Compl. ¶ 30. After participating in Smoothstack's training program, Plaintiff acquired the skills necessary to be placed as a developer with Accenture Federal Service ("Accenture") and to begin a new career in a growing industry. Compl. ¶ 41.  As part of this process, Plaintiff signed a training agreement (the "Training Agreement") and an employment agreement (the "Employment Agreement"). Plaintiff contends that these agreements are unconscionable and unenforceable. Plaintiff also contends that he was not paid the appropriate wages by Smoothstack.

## II. LEGAL STANDARD

To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, thereby nudg[ing] their claims across the line from conceivable to plausible." *Id*. (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 L.Ed.2d 929 (2007)). While a court must accept the material facts alleged in the complaint as true,

statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### III.   ARGUMENT

Plaintiff filed the present class and collective action Complaint asserting seven (7) causes of action. Count III and Count IV assert FLSA violation for "illegal kickbacks" and "failure to pay wages free and clear." Additionally, Count V and Count VI assert common law claims, on behalf of Plaintiff and the class, alleging that the Training Agreement and Employment Agreement (Compl. Ex. 2 and 3) are unconscionable and unenforceable. Plaintiff has failed to set forth sufficient facts to support these claims.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. A federal court may resolve only "a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2203 (2021). Thus, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. (explaining that "the plaintiffs bear the burden of demonstrating that they have standing."). If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id*. In *TransUnion*, the Supreme Court further explained that:

> To appreciate how the Article III "concrete harm" principle operates in practice, consider two different hypothetical plaintiffs. Suppose first that a Maine citizen's land is polluted by a nearby factory. She sues the company, alleging that it violated a federal environmental law and damaged her property. Suppose also that a second plaintiff in Hawaii files a federal lawsuit alleging that the

4

> same company in Maine violated that same environmental law by polluting land in Maine. The violation did not personally harm the plaintiff in Hawaii.
>
> Even if Congress affords both hypothetical plaintiffs a cause of action (with statutory damages available) to sue over the defendant's legal violation, Article III standing doctrine sharply distinguishes between those two scenarios. The first lawsuit may of course proceed in federal court because the plaintiff has suffered concrete harm to her property. But the second lawsuit may not proceed because that plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts. An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's "compliance with regulatory law" (and, of course, to obtain some money via the statutory damages). Those are not grounds for Article III standing.

*Id*. at 2206. Further, "[e]very class member must have Article III standing in order to recover individual damages" and "must maintain their personal interest in the dispute at all stages of litigation." *Id*. at 2208.

### A. Plaintiff Has Failed to Establish Standing or State a Claim for Counts III and IV.

In Counts I and II, Plaintiff has alleged that he did not receive minimum wage and overtime during the training period with Smoothstack in 2020. These allegations are separate and distinct from Counts III and IV, wherein Plaintiff alleges minimum wage violations as a result of a repayment provision in the Employment Agreement. Specifically, in Count III, Plaintiff has alleged that the "[r]epayment of alleged costs under the [Employment Agreement] that Defendant has imposed on Plaintiff and the FLSA Collective . . .is an illegal kickback of wages to Defendant." Compl. ¶ 249. Similarly, in Count IV, Plaintiff has alleged that Smoothstack failed to pay wages "free and clear' or "finally and unconditionally" because Smoothstack required "Plaintiff and other similarly situated employees to return their wages to Defendant **if** they left the jobs." Compl. ¶ 264. (Emphasis added).

It is undisputed that Plaintiff never actually returned any wages, made any payment to Smoothstack, or had any wages deducted upon leaving employment. If Smoothstack never actually "kicked back" any wages of Plaintiff (which is undisputed), then "these costs" could not have taken Plaintiff's "wages below minimum wage, resulting in a minimum wage violation" as alleged by Plaintiff. Compl. ¶ 250. These allegations present only a hypothetical scenario, which never actually occurred. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 1147, 185 L. Ed. 2d 264 (2013) ("[a]llegations of possible future injury" are not sufficient to confer standing). Similarly, because these allegations never actually occurred, Plaintiff has failed to plead (a) what wages it contends were "kicked back" or (b) how any (hypothetical) repayment acted to reduce Plaintiff's compensation below minimum wage. To the contrary, Plaintiff asserts that he was regularly paid $31.25 per hour by Smoothstack and then, in March and April 2023, the Colorado minimum wage of $13.65. Compl. ¶ 206-07. "Failure to pay wages free and clear" and "illegal kickbacks" are not independent causes of action under the FLSA (this language arises instead from 29 C.F.R. § 531.35). To state a claim, Plaintiff must plausibly allege that these practices **actually caused** Plaintiff to receive less than minimum wage. It has failed to do so. *See e.g., Franks v. MKM Oil, Inc.*, No. 10 C 13, 2010 WL 3613983, at *4 (N.D. Ill. Sept. 8, 2010) (finding that plaintiff did "not plead any facts that demonstrate her repayment. . . ever caused her to earn less than the minimum wage in a given workweek. Therefore, [plaintiff] fails to state a claim . . . for violation of its FLSA obligations with regards to paying her wages that were "free and clear.").

Further, Plaintiff has not set forth any facts that establish he has been harmed simply by the inclusion of certain repayment provisions in the Employment Agreement. Under the present

circumstances Smoothstack cannot request repayment from Plaintiff, nor did it. Plainitff's claim relates to the language of Provision 5.1 of the Employment Agreement, which states:

> **<u>Damages Due to Termination by Employee Prior to Service Commitment Period</u>**. In the event that the Employee resigns or is terminated for Cause prior to Commitment Period as defined in section 3.1.f, the Employee shall pay $23,875 to the Company to reimburse the Company for the Training, Marketing, and On-Boarding Cost. Employee understands and expressly acknowledges that every project for which the Company is hired is unique. In the event that the Employee breaches this Agreement in any manner the Company will suffer significant and extensive damages, including the cost to train replacements, the cost associated with interruption of work on a project, loss of goodwill, and, potentially, loss of income generating projects. Accordingly, the Employee agrees to pay to the Company $23,875 as liquidated damages, and not as penalty, for each such breach.  (Compl. at Ex. 2)

The Commitment Period referenced at 3.1.f is 4000 hours.  Thus, a repayment obligation under the Employment Agreement is only triggered when an employee has not completed the 4000 hour (Commitment Period) and when (a) an employee resigns or (b) an employee is terminated for cause. *See*. Compl. ¶ 18; Ex. 2. Plaintiff does not allege that he resigned or was "terminated for cause." Thus, Plaintiff also lacks standing to pursue these theoretical claims.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Id*. Further, "[p]articularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.' " *Id*.  Again, notably absent from the Complaint are any allegations that Plaintiff actually suffered any "particularized" or  "concrete" injury as a result of the repayment provisions in the Employment Agreement. Because Plaintiff never repaid any sum to

7

Smoothstack, he cannot maintain claims for minimum wage violations from "kickbacks" that never happened and cannot happen.

   B. <u>Counts V and VI Fail to State A Claim.</u>

Count V of the Complaint asserts a claim titled, "Virginia Common Law: Unconscionable Contract Provision." Likewise, Count VI of the Complaint asserts a claim titled, "Virginia Common Law: Unenforceable Contract Provision." These are not recognized causes of actions in Virginia, but instead defenses to a breach of contract claim. *See e.g. Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) ("generally applicable contract defenses [include] fraud, duress, or unconscionability."); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010). Neither Plaintiff nor Defendant are attempting to enforce the Employment Agreement.

This Court has previously declined to exercise supplemental jurisdiction over similar claims, explaining the following:

> The novel issue is whether Virginia law permits a plaintiff to bring freestanding claims for declaratory judgment that a contract is unconscionable or an enforceable servitude. In dismissing Southern Walk's First Amended Complaint in the predecessor action, the Court expressed serious doubt about whether freestanding claims of unconscionability and unenforceable servitudes exist under Virginia law. (*See Southern Walk at Broadlands Homeowners Ass'n v. OpenBand at Broadlands, LLC*, Case No. 1:11–cv–517 (GBL/TCB) Doc. 71, at 3031.) Southern Walk raises the same unconscionability and unenforceable-servitudes claims in its new Complaint yet fails to address the Court's doubts about their viability.

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, No. 1:13-CV-1353 GBL/JFA, 2014 WL 1911884, at *10 (E.D. Va. May 13, 2014).

   C. <u>Plaintiff Has Failed to Establish Standing for Counts V and VI.</u>

8

Even to the extent these claims are cognizable, Plaintiff lacks standing to assert them. In Counts V and VI, Plaintiff contends that the Training Agreement and Employment Agreement are unenforceable and unconscionable because "[i]f a Consultant resigns or is terminated for cause before the end of the Service Commitment Period, Smoothstack is entitled to require the Consultant to pay an outrageous penalty of $23,875.00." Compl. ¶ 18. Again, Plaintiff had not alleged that he resigned or was "terminated for cause." More importantly, Plaintiff does not allege that (a) he was required to actually pay any amount to Smoothstack, (b) Smoothstack is attempting to enforce the agreements, (c) the agreements are active or in-effect, or (d) that Plaintiff suffered any actual or concrete injury. A "concrete" injury must be "de facto"; that is, it must actually exist. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). There is no actual or concrete injury to Plaintiff, caused by Smoosthstack, that can be redressed. Plaintiff's claims are premised entirely upon the theoretical, i.e., what could have happened. Because Plaintiff did not resign and was not terminated for cause, Smoothstack cannot enforce these provisions against Plaintiff. Regardless of the outcome of this action, the Employment Agreement has already been terminated.

In light of this, Plaintiff has not identified any "imminent injury in fact" or "an ongoing injury" that provides standing for its requested injunctive relief. *Garey v. James S. Farrin*, P.C., 35 F.4th 917, 922 (4th Cir. 2022). *See also Esedebe v. Circle 2, Inc.*, No. 3:20-CV-8-HEH, 2021 WL 232595, at *2 (E.D. Va. Jan. 22, 2021) ("A plaintiff bears the burden of establishing that she has standing for each type of relief sought."). In sum, Plaintiff has no "personal stake" in the lawsuit to justify the invocation of federal jurisdiction. *See e.g. Thole v. U. S. Bank N.A*, 207 L. Ed. 2d 85, 140 S. Ct. 1615, 1622 (2020)(finding that "the plaintiffs lack Article III standing for a simple, commonsense reason: They have received all of their vested pension benefits so far, and

they are legally entitled to receive the same monthly payments for the rest of their lives. Winning or losing this suit would not change the plaintiffs' monthly pension benefits.").

Additionally, a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, is only proper if the facts show a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Ross v. Reed*, 719 F.2d 689, 694 (4th Cir. 1983). Because the contract was terminated and the repayment obligation cannot be triggered, Plaintiff would be entirely unaffected by any declaration of unenforceability or unconscionability. There is no controversy or adverse interests with respect to the Employment Agreement. The issue is moot.

WHEREFORE, Defendant, by counsel, requests that this Court grant Defendant's Motion to Dismiss, dismiss Counts III-VI, and for all other relief this Court deems just and proper.

Respectfully Submitted,

By Counsel

  /s/    Dirk McClanahan
Zach Miller, Esq. (VSB No. 85860)
Dirk McClanahan, Esq. (VSB No. 81208)
McClanahan Powers, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Tel: (703) 520-1326
Fax: (703) 828-0205
Email: zmiller@mcplegal.com
              dmcclanahan@mcplegal.com
*Counsel for Smoothstack, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023, the foregoing *document* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Dirk McClanahan