IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| JUSTIN O'BRIEN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>SMOOTHSTACK, INC.,<br><br>    Defendant. | **Civil Action No. 1-23-cv-00491-RDA-LRV** |

**Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss**

# TABLE OF CONTENTS

Introduction ................................................................................................................................... 1

I.   Background ......................................................................................................................... 1

II.  Legal Standard .................................................................................................................... 2

III. Argument ............................................................................................................................ 3

    A.   Plaintiff Has Alleged an Injury Under Article III of the U.S. Constitution ............... 4

    B.   An Employer Fails to Pay Wages Free and Clear in Each Workweek Wages
         Are Subject to a Conditional Deduction ..................................................................... 8

IV.  Conclusion ......................................................................................................................... 10

i

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                           **PAGE(S)**

*Arriaga v. Fla. Pac. Farms, LLC*,
  305 F.3d 1228 (11th Cir. 2002) ................................................................................................ 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 3

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) ................................................................................................... 3

*Coleman v. Md. Court of Appeals*,
  626 F.3d 187 (4th Cir. 2010) ................................................................................................... 2

*Davis v. Colonial Freight Sys., Inc.*,
  No. 16 Civ. 674, 2017 U.S. Dist. LEXIS 221275 (E.D. Tenn. Nov. 22, 2017) ....................... 9

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ................................................................................................... 2

*Energy Recovery, Inc. v. Hauge*,
  133 F. Supp. 2d 814 (E.D. Va. 2000) ...................................................................................... 7

*Franks v. MKM Oil, Inc.*,
  No. 10 Civ. 13, 2010 U.S. Dist. LEXIS 93587 (N.D. Ill. Sept. 8, 2010) ................................. 8

*Futrell v. Cargill, Inc.*,
  No. 22 Civ. 969, 2023 U.S. Dist. LEXIS 43243 (D. Minn. Mar. 15, 2023) ......................... 5, 6

*Goldfarb v. Mayor & City Council of Balt.*,
  791 F.3d 500 (4th Cir. 2015) ................................................................................................... 3

*Hawks v. City of Newport News, Va.*,
  707 F. Supp. 212 (E.D. Va. 1988) ......................................................................................... 10

*Hunt v. Interactive Med. Specialists, Inc.*,
  No. 19 Civ. 13, 2019 U.S. Dist. LEXIS 208561 (N.D.W. Va. Dec. 4, 2019) ..................... 4, 6

*Ketner v. Branch Banking & Tr. Co.*,
  143 F. Supp. 3d 370 (M.D.N.C. 2015) ........................................................................... 7, 8, 9

*McIntyre v. Div. of Youth Rehab. Servs.*,
  795 F. Supp. 668 (D. Del. 1992) ..............................................................................................6

*Rogers v. Sav. First Mortg., LLC*,
  362 F. Supp. 2d 624 (D. Md. 2005) ......................................................................................... 4

*Roland Elec. Co. v. Black*,
  163 F.2d 417 (4th Cir. 1947) ................................................................................................... 4

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................................ 4

*Stein v. HHGREGG, Inc.*,
    873 F.3d 523 (6th Cir. 2017) ................................................................................. 6, 7, 8, 9

*Thomas v. Cnty. of Fairfax, Va.*,
    803 F. Supp. 1142 (E.D. Va. 1992) ..................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 12 ............................................................................................. 3

**Other**

29 C.F.R. § 531.35 ........................................................................................................... 5, 6, 8, 10
29 C.F.R. § 541.602 ..................................................................................................................... 9
U.S. Const. art. III ........................................................................................................................ 3

**Introduction**

Plaintiff Justin O'Brien filed this action on behalf of himself and others similarly situated (the "FLSA Collective") against Defendant Smoothstack, Inc. ("Smoothstack") alleging, as relevant to this motion, that Smoothstack's Training Repayment Agreement Provision ("TRAP") unlawfully traps its employees into working for below-market wages and threatens them with penalties of upwards of $24,000 if they try to leave their jobs before meeting a mandatory billable hour requirement. *See* First Am. Compl. ("FAC") ¶¶ 2, 155, ECF No. 19. The First Amended Complaint alleges in Count Three that this practice violates the Fair Labor Standards Act's ("FLSA") requirement that employers pay employees an amount no less than the minimum wage "free and clear." *Id*. ¶¶ 4, 219-21.[1]

**I.   Background**

Smoothstack recruits information technology (IT) workers at the beginning of their careers ("Recruits"), promising to provide them with paid training followed by a work assignment with a Fortune 500 company. FAC ¶ 1. In reality, Recruits soon find that the training is unpaid for the first three weeks. *Id*. ¶¶ 8, 100. Thereafter, during the rest of the training, Recruits are paid the minimum wage for 40 hours per week of work, but work far more than 40 hours, resulting in pay well under the minimum wage. *Id*. ¶¶ 9, 101-03. The training focuses heavily on Smoothstack's own needs, rather than providing any generally marketable

---

[1] The First Amended Complaint also alleges collective claims for minimum wage (Count One) and overtime violations (Count Two) and an individual retaliation claim (Count Four) under the FLSA, which Smoothstack does not seek to dismiss. *See* FAC ¶¶ 4-5, ECF No. 19. A prior version of the Complaint alleged additional claims challenging the TRAP under the FLSA and Virginia law. *See* Compl., ECF No. 1. Smoothstack moved to dismiss these claims, *see* Def's Mot. to Dismiss, ECF No. 13, and in response, Plaintiff amended the Complaint and withdrew these claims after Smoothstack stipulated that Plaintiff did not resign from his employment with Smoothstack and Smoothstack did not terminate him for cause, and that Smoothstack therefore could not enforce the TRAP against him. *See* Stipulation, ECF No. 18.

credential, license, or degree upon completion.  *Id*. ¶¶ 6-10, 104-07, 111-18.

Although the training is primarily for Smoothstack's own benefit, Smoothstack requires Recruits to sign a Training Repayment Agreement Provision ("TRAP") shortly after hire as a condition of their participation in the training, and then another TRAP prior to their placement with one of Smoothstack's clients.  *Id*. ¶¶ 16-18, 20, 128, 130-31.  Signing these TRAPs is a condition of continued employment with Smoothstack.  *Id*. ¶¶ 16-17, 18-19.  The TRAP obligates Smoothstack employees to bill 4,000 hours of client work — or approximately two years of full-time employment — before they can resign.  *Id*. ¶¶ 17, 20.  Failure to abide by these terms requires employees to pay Smoothstack a penalty of up to approximately $24,000.  *Id*. ¶¶ 17, 20.  The TRAP states that this sum is intended to compensate Smoothstack for the costs of training, as well as "marketing[] and on-boarding," the "cost to train replacements, the cost associated with interruption of work on a project, loss of goodwill, and potentially, loss of income generating projects."  *Id*. ¶¶ 127, 149-51.

As a result of the TRAP, Recruits cannot quit, either during the training or during the first few years of working with a Smoothstack client, without owing Smoothstack tens of thousands of dollars.  *Id*. ¶¶ 17, 20.  The effect of the TRAP is that each paycheck Plaintiff and potential Collective Members earn is conditional—that is, it is paid contingent upon their remaining employed with Smoothstack through the following pay period.  *Id*. ¶¶ 24, 89-90, 129.

**II.     Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  When deciding the motion, the court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff."  *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010).  It is well-

2

established that at the motion-to-dismiss stage, a plaintiff need only allege facts sufficient "to state a claim to relief that is plausible on its face." *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) (citation omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

A motion to dismiss under Rule 12(b)(1) tests whether the court has subject matter jurisdiction to decide the case. "A defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). Where a defendant raises a facial challenge, contending that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based," the court must accept "the facts alleged in the complaint . . . as true." *Id.* (citation and internal quotation marks omitted). The court must deny the motion "if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* (citation omitted).

**III.   Argument**

Although Smoothstack does not clearly distinguish between these arguments in its briefing, it raises two separate but overlapping bases for moving to dismiss Plaintiff's "free and clear" FLSA claim. The first, which arises under Federal Rule of Civil Procedure 12(b)(1), is that Plaintiff lacks standing because he failed to plead an injury-in-fact, as required by Article III of the United States Constitution. The second, which arises under Federal Rule of Civil Procedure 12(b)(6), is that Plaintiff failed to plead facts showing that Smoothstack violated the FLSA's "free and clear" requirement. For the reasons set forth below, both of these arguments fail.

3

### A. Plaintiff Has Alleged an Injury Under Article III of the U.S. Constitution

Article III of the United States Constitution requires plaintiffs to allege that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact is one that is concrete, particularized, and actual or imminent, as opposed to "conjectural or hypothetical." *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Id.* at 340. For example, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* at 341 (quoting *Lujan*, 504 U.S. at 578 (holding that injury to one's "personal interest in living in a racially integrated community" and to a company's "interest in marketing its product free from competition" are cognizable injuries under Article III)).

In the wage-and-hour context, courts recognize that alleged violations of the minimum wage provisions of the FLSA give rise to Article III standing even if the employer subsequently remedies the violations and pays any backpay owed before the employee brings suit. Thus, it is well-settled that failing to pay employees on time is a redressable minimum wage violation, even if the employees receive all of the money they earned in a subsequent pay period. *See, e.g.*, *Hunt v. Interactive Med. Specialists, Inc.*, No. 19 Civ. 13, 2019 U.S. Dist. LEXIS 208561, at *3 (N.D.W. Va. Dec. 4, 2019) (collecting cases); *Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 631 (D. Md. 2005) (holding that the minimum wage "amount must be paid . . . free and clear (i.e. finally and unconditionally) *on the payday for that week*" (emphasis in original) (citation omitted)). Failing to timely pay overtime also violates the FLSA, even if the employer later makes up the difference. *See, e.g., Roland Elec. Co. v. Black*, 163 F.2d 417, 421 (4th Cir.

4

1947) (holding that if an employer "fails to pay overtime compensation promptly and when due on any regular payment date, the statutory action for the unpaid minimum and liquidated damages given under Section 16(b) *immediately* arises in favor of the aggrieved employee" (emphasis added)); *Futrell v. Cargill, Inc.*, No. 22 Civ. 969, 2023 U.S. Dist. LEXIS 43243, at *8-11 (D. Minn. Mar. 15, 2023). This is because a cause of action under the FLSA "'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends.'" *Futrell*, 2023 U.S. Dist. LEXIS 43243, at *8 (quoting *McDonald v. JP Mktg. Assocs., LLC*, No. 06 Civ. 4328, 2007 U.S. Dist. LEXIS 27747, at *20 (D. Minn. Apr. 13, 2007)); *see also id*. n.4 (collecting cases).

Similarly, here, Plaintiff has alleged that he was never paid wages free and clear or finally and unconditionally during his employment. Specifically, Count Three of the complaint alleges that Smoothstack violated the FLSA by failing to "pay no less than the federal minimum wage for each hour worked free and clear." FAC ¶ 221. Smoothstack acknowledges that pursuant to Department of Labor ("DOL") regulations, wages must be paid "free and clear" to satisfy the FLSA's minimum-wage requirements. 29 C.F.R. § 531.35. In other words, "'wages' cannot be considered to have been paid by the employer and received by the employee *unless* they are paid finally and unconditionally." *Id.* (emphasis added). Plaintiff alleges that he and others like him who were subject to the TRAP did not receive minimum and overtime wages that were paid "free and clear" or "finally and unconditionally" because through operation of the TRAP, Smoothstack reserved the right to claw back the full amount of its employees' salaries—and then some—if they failed to remain employed through the following pay period. FAC ¶¶ 219-21. Thus, pursuant to the plain language of the FLSA's implementing regulations, the

5

minimum wage "cannot be considered to have been paid by the employer and received by the employee" during the period that the TRAP was in effect. 29 C.F.R. § 531.35.

The failure to pay wages free and clear is not a hypothetical injury; it is something that Plaintiff alleges happened to him and to his colleagues with each paycheck, both during the training period and upon placement with a Smoothstack client. FAC ¶¶ 24, 89-90, 129, 219-21. In accordance with this allegation, Plaintiff seeks minimum wage for each hour worked, along with liquidated damages and other relief. *Id*. ¶ 224. This states a claim for a redressable injury that accrued at the end of each pay period. *See, e.g.*, *Hunt*, 2019 U.S. Dist. LEXIS 208561, at *3; *Futrell*, 2023 U.S. Dist. LEXIS 43243, at *8; *cf. McIntyre v. Div. of Youth Rehab. Servs.*, 795 F. Supp. 668, 674 (D. Del. 1992) (observing that courts have "uniform[ly]" concluded that "a separate cause of action" accrues under the FLSA "each payday" (citation omitted)).

In addition to the statutory harm under the FLSA, Plaintiff has alleged several other redressable harms caused by Smoothstack's policies. Courts have recognized that "[i]ncurring a debt, or even *believing* that one has incurred a debt, has far-reaching practical implications for individuals." *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 535 (6th Cir. 2017). In *HHGREGG*, the Sixth Circuit examined a motion to dismiss a "free and clear" violation where the employer's policy was to provide employees with a draw on commission in weeks where the employee's commission earnings did not reach a certain minimum. *Id*. at 526. The following week, the employer would deduct the amount of the draw from the employees' earnings. *Id*. at 527. The employees alleged that this made the draw "nothing more than a loan" that employees were required to pay back to their employers, and therefore violated the free and clear requirements of the FLSA. *Id*. at 530, 530-31.

6

The Sixth Circuit considered whether the plaintiffs in *HGREGG* had stated a claim given that—much like happened here—"defendant's counsel represented to the court that defendants have not collected and will not in the future collect any debts from any employee upon termination, and that [the challenged] language is no longer in the policy." *Id*. at 534-35. The court held that plaintiffs had stated a plausible claim for relief, noting that an unlawful debt can have negative consequences even if it is never enforced; for example, believing one owes a debt could impact "the way an individual saves money or applies for loans" and could affect "job applications, credit applications, court documents, or other financial records that require self-reporting of existing liabilities." *Id*. at 535.

None of these harms are "hypothetical scenarios," as Smoothstack would have it. Nor are the harms that Plaintiff alleges in the First Amended Complaint. Smoothstack's failure to pay the minimum wage free and clear kept workers, including Plaintiff, stuck in jobs that paid well under market wages (and under the minimum wage during the training period) by holding the TRAP debt over their heads. *See, e.g.*, FAC ¶ 155 (alleging that Plaintiff made more than $20 an hour below the average market wage); *id.* ¶ 178 (alleging that Plaintiff could not resign from his job even when Smoothstack reduced his wages to the minimum wage because of the TRAP debt). This is a concrete and redressable injury. For example, in *Ketner v. Branch Banking & Trust, Co.*, 143 F. Supp. 3d 370 (M.D.N.C. 2015), the court found Article III standing for a challenge to a TRAP based in part on the defendant's history of collection activities, holding that this created "'an objective and reasonable apprehension of future litigation' regarding his alleged payment obligations." *Id*. at 383 (citing *Energy Recovery, Inc. v. Hauge*, 133 F. Supp. 2d 814, 817 (E.D. Va. 2000)). Here, at the time his claims accrued (i.e., at the end of each pay period), the fear that kept Plaintiff from departing was doubtless reasonable: As set forth in the First

7

Amended Complaint, Smoothstack has brought litigation against its own employees several times in order to enforce the TRAP.  FAC ¶ 25.

      **B.**      **An Employer Fails to Pay Wages Free and Clear in Each Workweek Wages Are Subject to a Conditional Deduction**

As discussed in more detail above, Plaintiff has alleged that he did not receive the minimum wage free and clear or finally and unconditionally in any pay period that he worked for Smoothstack.  *See* Section III.A, *supra*.  This is sufficient to state a claim under the FLSA, even absent an allegation that Plaintiff's compensation actually caused Plaintiff to receive less than minimum wage.  *See, e.g.*, *HHGREGG*, 873 F.3d at 530; *Ketner*, 143 F. Supp. 3d at 383.  The sole case that Smoothstack cites in support of dismissal is irrelevant because the complaint in that case failed to plead either the amount of the plaintiff's wages or the amount of the unlawful deductions, meaning that there was no way to ascertain whether the alleged unlawful deductions were large enough to bring the plaintiff's wages below minimum wage in any workweek.  *Franks v. MKM Oil, Inc.*, No. 10 Civ. 13, 2010 U.S. Dist. LEXIS 93587, at *11-13 (N.D. Ill. Sept. 8, 2010).  In contrast, Plaintiff has alleged that the debt imposed by Smoothstack's TRAP would have brought his pay below minimum wage in any workweek in which it was enforced.  FAC ¶¶ 147-48, 221.  Although the cost of the training was not directly deducted from employee paychecks, "[t]here is no legal difference between deducting a cost directly from [a] worker's wages and shifting a cost, which they could not deduct, for the employee to bear."  *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1236 (11th Cir. 2002) (holding that plaintiffs could recover for an FLSA violation even where the employer did not directly deduct the unlawful costs from a paycheck); *see also HGREGG*, 873 F.3d at 532 (holding that it is "unlawful for an employer to require an employee to return wages already 'delivered to the employee'" (quoting 29 C.F.R. § 531.35)); *Ketner*, 143 F. Supp. 3d at 383.

As the *HHGREGG* court held, even where an employer does not actually enforce a challenged policy, it is appropriate to "focus[] upon the language of a written policy rather than its actual implementation, because '[s]imply because a [policy] has never been applied does not mean that the employee has not been affected by the policy.'" 873 F.3d at 534 (quoting *Mich. Ass'n of Governmental Emps. v. Mich. Dep't of Corr.*, 992 F.2d 82, 86 (6th Cir. 1993)); *see also Davis v. Colonial Freight Sys., Inc.*, No. 16 Civ. 674, 2017 U.S. Dist. LEXIS 221275, at *17 (E.D. Tenn. Nov. 22, 2017) ("[W]hether Plaintiff ever reimbursed Defendants for the stipend he received is irrelevant, because the policy as written violates the FLSA by continuing to hold employees responsible for wages already delivered."). Courts in the Eastern District of Virginia have reached the same conclusion as to similar claims. For example, in *Thomas v. County of Fairfax, Virginia*, 803 F. Supp. 1142 (E.D. Va. 1992), the court evaluated whether employees were subject to the executive exemption from the FLSA's overtime requirements. *Id*. at 1144. The plaintiffs argued that they were not exempt because they were not paid on a salary basis, as evidenced by the fact that the employer's written policy allowed for a reduction in pay based on hours worked. *Id*. at 1144-46. The employer countered that there was no evidence that any employee's pay had actually been reduced. *See id*. at 1149. The court held that the plaintiffs had proven an FLSA violation based on the written policy and the language of the relevant regulation, which "simply provides that an employee is not salaried if his or her salary is '*subject* to reduction' because of variations in the quality or quantity of work." *Id*. (emphasis in original)[2] "The regulation does not require an employee to show any *actual* reduction." *Id*.

---

[2]   *Thomas* cites to 29 C.F.R. § 541.118(a), which no longer exists. The current regulation, 29 C.F.R. § 541.602, is the same as to its material terms. *See id.* ("An employee will be considered to be paid on a 'salary basis' within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount

9

(emphasis in original); *see also Hawks v. City of Newport News, Va.*, 707 F. Supp. 212, 215 (E.D. Va. 1988) ("The Court is of the opinion that it is the defendant's policy which is under attack in a suit brought under the FLSA. The fact that the policy has not been applied to a particular group of employees does not alter the policy itself.").

The same analysis applies here. The relevant regulation, 29 C.F.R. § 531.35, simply provides that "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'" Plaintiff has pleaded facts to show that his wages were paid subject to a conditional kickback. It is therefore immaterial to pleading and proving his claim whether that condition was ever fulfilled such that he *actually* kicked back his wages to Smoothstack.[3]

## IV.  Conclusion

For the foregoing reasons, Smoothstack's motion to dismiss should be denied.

Dated: June 20, 2023

Respectfully submitted,

By: _____
    Molly Elkin

Molly Elkin (Va. Bar No. 40967)
Rachel Lerner*
**McGillivary, Steele, & Elkin LLP**
1101 Vermont Ave NW, Suite 1000
Washington, D.C. 20005
Phone: (202) 833-8855
Email: mae@mselaborlaw.com
Email: rbl@mselaborlaw.com

---

constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.")

[3]  Plaintiff notes that he did plead claims for an unlawful kickback in his original Complaint, *see* ECF No. 1, but dropped those claims based on Smoothstack's representation that it would not seek to collect from him, *see* Stipulation, ECF No. 18.

Rachel W. Dempsey**
David Seligman***
**Towards Justice**
PO Box 371680, PMB 44465
Denver, CO 80237
Telephone: (720) 441-2236
Email: rachel@towardsjustice.org
Email: david@towardsjustice.org

Jahan C. Sagafi*
**Outten & Golden LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8837
Email: jsagafi@outtengolden.com

Hannah Cole-Chu*
Courtney J. Hinkle*
**Outten & Golden LLP**
1225 New York Ave, NW Suite 1200B
Washington, D.C. 20005
Telephone: (202) 915-5810
Email: hcolechu@outtengolden.com
Email: chinkle@outtengolden.com

Persis Yu***
Khandice Lofton***
**Student Borrower Protection Center**
(a fiscally sponsored project of the Shared Ascent Fund)
1025 Connecticut Ave NW, #717
Washington, D.C. 20036
Telephone: (202) 670-3871
Email: persis@protectborrowers.org
Email: khandice@protectborrowers.org

* Admitted *Pro hac vice*

** *Pro hac vice* application pending

*** *Pro hac vice* application forthcoming.

*Attorneys for Plaintiff and the Putative FLSA Collective*

CERTIFICATE OF SERVICE

      I certify that on June 20, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Dirk Harris McClanahan
Zachary Charles Miller
McClanahan Powers, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Telephone: (703) 520-1326
Email: dmcclanahan@mcplegal.com
Email: zmiller@mcplegal.com

/s/ Molly A. Elkin

12