**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| **JUSTIN O'BRIEN,** *on behalf of himself and all others similarly situated* | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : Civil Action No. 1:23-cv-00491-RDA-LRV <br> : |
| **SMOOTHSTACK, INC.,** | : <br> : |
| Defendant. | : <br> : |

### REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allen v. Cnty. of Fairfax*, Va., 16 F.3d 408 (4th Cir. 1994)……………………………………….8

*Bland v. Edward D. Jones & Co., L.P.,* 375 F. Supp. 3d 962, 973 (N.D. Ill. 2019)……………3, 4

*Cudnik v. W.L. York, Inc.*, No. CV H-20-2998, 2021 WL 3674972, at *2 (S.D. Tex. Feb. 5, 2021)……………………………………………………………………………………………8

*Franks v. MKM Oil, Inc.*, No. 10 C 13, 2010 WL 3613983, at *4 (N.D. Ill. Sept. 8, 2010)……...7

*Hawks v. City of Newport News, Va.*, 707 F. Supp. 212, 214 (E.D. Va. 1988)…………………...8

*Ketner v. Branch Banking & Tr. Co.*, 143 F. Supp. 3d 370, 383 (M.D.N.C. 2015)………………4

*Mitchell v. Wells Fargo Bank, N.A.*, No. 220CV02444TLPATC, 2022 WL 19076619, at *9 (W.D. Tenn. Dec. 14, 2022)……………………………………………………………………….8

*New York Taxi Workers All. v. Uber Techs., Inc.*, No. 16 CIV. 4098 (AKH), 2017 WL 10402924, at *1 (S.D.N.Y. Sept. 6, 2017)…………………………………………………………………….7

*Park v. FDM Grp. (Holdings) PLC*, No. 16 CV 1520-LTS, 2017 WL 946298, at *4 (S.D.N.Y. Mar. 9, 2017)………………………………………………………………………………………8

*Platek v. Duquesne Club*, 961 F. Supp. 835, 838–39 (W.D. Pa. 1995)…………………………...7

*Stein v. HHGREGG, Inc.*, 873 F.3d 523, 526 (6th Cir. 2017)…………………………………….5

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)…...6

*Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342 (JGK), 2022 WL 596831, at *6 (S.D.N.Y. Feb. 25, 2022)……………………………………………………………………………………..8

*Thomas v. Cnty. of Fairfax*, Va., 803 F. Supp. 1142, 1144 (E.D. Va. 1992)……………………...8

**Regulations**

29 C.F.R. § 531.35………………………………………………………………………………...9
29 C.F.R. § 541.118………………………………………………………………………………8
29 U.S.C.A. § 206…………………………………………………………………………………9
29 C.F.R. § 531.35 (2010)………………………………………………………………………...9

COMES NOW, Defendant Smoothstack, Inc. ("Smoothstack" or "Defendant"), by counsel, and hereby submits this Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss and states as follows:

I. ARGUMENT

    A. Plaintiff Has Failed to Establish Standing for Count III.

In Plaintiff's Opposition to Defendant's Motion to Dismiss (the "Opposition"), Plaintiff argues that he has standing to pursue a claim for failure to pay minimum wage "free and clear" or "finally and unconditionally" for two principal reasons: (1) standing exists even when minimum wage violations are later remedied, and (2) Plaintiff's *belief* that he could have incurred a debt from the repayment provision in the employment agreement is a sufficient concrete harm to confer standing. Under Count III, "Plaintiff seeks minimum wage for each hour worked, along with liquidated damages and other relief," despite his own concession that, at all times after the training period in 2020, he was paid more than minimum wage. Pl. Opp. P. 6; Am. Compl. ¶ 175-76.

Plaintiff cites numerous cases for the proposition that "failing to pay employees on time is a redressable minimum wage violation," even when the employee is later paid. Pl. Opp. P. 5. Plaintiff attempts to analogize these cases to its claims for failing to pay "free and clear." However, in every case cited by Plaintiff in its Opposition (P. 4-5), the employer failed to *actually* make payments to the employees during the relevant pay period, resulting in minimum wage violations. Here, again, Smoothstack never failed to pay Plaintiff minimum wage, on time, in any pay period. In *Bland v. Edward D. Jones & Co., L.P.*, the court dismissed a "free and clear" claim where the plaintiffs were never required to make any repayment, noting that "[i]n all

4

but one of the cases[1] cited by the parties in which a court has reviewed a contract provision similar to the [repayment] [p]rovision at issue here, the plaintiff had actually been deprived of a concrete dollar amount by the defendant." 375 F. Supp. 3d 962, 973 (N.D. Ill. 2019). In doing so, the court identified that, "Defendants never reduced Plaintiffs wages below the minimum wage while they were employed" (*Id*. at 977) and that "[a]ll the arguments that Plaintiffs raise against the [repayment] [p]rovision . . . are either potential defenses to the enforcement of the contract that Plaintiffs could raise if and when Defendants attempt to enforce the provision or possible reasons to invalidate the contract as a matter of state law" (*Id*. at 978), but they were "not reasons to find that the [repayment] [p]rovision violates the FLSA." *Id*.

In *Ketner*, a case relied upon by Plaintiff, the court permitted a "free and clear" claim arising from a repayment provision where the defendant "sent Ketner collection letters, demanding payment under the [repayment provision] and threatening legal action if payment was not made." *Ketner v. Branch Banking & Tr. Co*., 143 F. Supp. 3d 370, 383 (M.D.N.C. 2015). Given these actions, the court found "an objective and reasonable apprehension of future litigation regarding [Ketner's] payment obligations," sufficient to confer standing. Even if this Court finds the *Ketner* opinion persuasive, there is no "objective and reasonable apprehension of future litigation" regarding the repayment provision in this lawsuit. Because Plaintiff did not resign and was not terminated for cause, Smoothstack could not have pursued repayment under the Employment Agreement. *See* Def. Mt. to Dismiss P. 5-6. Likewise, Smoothstack has never sent Plaintiff a demand letter or threatened legal action if repayment was not made. In recognition of this fact, Smoothstack has also stipulated that it will not seek any repayment. *See*

---

[1] The case cited was *Ketner v. Branch Banking and Trust Company*, 143 F.Supp.3d 370 (M.D.N.C. 2015), which was also cited by Plaintiff in the Opposition and discussed herein.

Pl. Opp. P. 10, footnote 3. Given the plain reading of the parties' contract, and the stipulation of the parties, there is no possibility of future litigation regarding repayment.

Plaintiff also contends he was harmed by "believing that [he] incurred a debt," which is sufficient to confer standing. Pl. Opp. P. 6 (citing *Stein v. HHGREGG, Inc*., 873 F.3d 523, 535 (6th Cir. 2017)). *HHGREGG* involved a compensation arrangement where commission-based sales employees were advanced a "draw" (i.e., wages) to meet the minimum wage requirements whenever their commissions fell below minimum wage. *Stein v. HHGREGG, Inc*., 873 F.3d 523, 526 (6th Cir. 2017). The amount of the draw was then deducted from future earnings in weeks when the employees' commissions exceeded the minimum wage requirement. *Id*. If an employee left employment with a "deficit", the employment agreement required the immediate payment of those wages upon termination for any reason. *Id*. at 534. Although HHGREGG's counsel indicated it did not plan to pursue collection, the court focused on the "actual written policy" which required the plaintiff to make the repayment of wages upon termination for any reason. *Id*. at 535. In this case, even if the Court were to adopt a similar approach, the "actual written policy" (the Employment Agreement) does not allow Smoothstack to pursue repayment from Plaintiff under the present facts. It likewise does not require repayment upon termination "for any reason." Upon his separation from employment, there was no objective basis for Plaintiff to even believe he owed any repayment.

The dissenting opinion in *HHGREGG* noted that "the plaintiffs have not alleged that [defendant] sought repayment of their outstanding draws after they left the company, and they have not alleged that they were paid less than time and a half for overtime hours worked. In the absence of such facts, their claims remain on the wrong side of "the line between possibility and plausibility." *Id*. at 540. In the present case, there is not even a possibility, let alone plausibility,

6

of any repayment obligation owed by Plaintiff. Simply put, there is no concrete harm, and certainly not one that is actual or imminent. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016)("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'").

Finally, the cases relied upon by Plaintiff primarily concern repayment of "draws" (i.e., wages) upon termination. The Employment Agreement, here, does not specify any repayment or withholding of wages for failure to complete the commitment period. *See* Am. Compl. Ex. 2 para. 4.4. ("Upon termination for any reason, the Employee shall be entitled to wages earned and reimbursable expenses incurred through the date of termination, less applicable amounts to be withheld for taxes and applicable laws."). If Plaintiff's arguments were adopted, any liquidated damages provision for breach of a non-solicitation or confidentiality requirement would subject an employer to a "free and clear" claim.

B. <u>Count III Fails to State a Claim.</u>

Plaintiff's claim for failure to receive minimum wage "free and clear" asserts that the repayment "*would have* brought his pay below minimum wage in any workweek in which it was enforced." Pl. Opp. P. 8 (emphasis added). Simultaneously, Plaintiff claims damages of minimum wage for the entire "period that the [repayment provision] was in effect"—which Plaintiffs concludes was "every pay period." Pl. Opp. P. 6, 8; Am. Compl. ¶ 219.

Even in *Ketner*, however, the court took a different approach in assessing this claim. Specifically, the court examined whether repayment of $35,982.92 would result in Ketner "earning less than $7.25, the minimum wage, for the thirteen months he worked for BB&T." *Ketner*, 143 F. Supp. at 383. The payment BB&T sought to collect ($35,982.92) was only

$10,017.08 less than BB&T paid Ketner ($46,000) over that thirteen-month period, which would result in payment of less than minimum wage. *Id*. at 384. Thus, the court looked to the aggregate compensation received by the employee during his entire employment, minus the repayment amount, to determine if the resulting sum was less than $7.25 an hour.

Here, Plaintiff has admitted that (a) from October 29, 2020 to January, 9, 2022, Smoothstack paid Plaintiff $26.44 per hour, (b) from January 10, 2022 to March 23, 2023, Smoothstack paid Plaintiff $31.25 per hour, and (c) from March to April 2023, Smoothstack paid Plaintiff $13.65 per hour. Am. Compl. ¶¶ 155-56, 176. In total, Plaintiff has been paid more than $100,000 during his 2 ½ year period of employment. Using 52 standard 40-hour work weeks, minimum wage would be $15,080.00 per year. Even if Plaintiff was required to repay $23,875, his wages during the duration of his employment would have been well above minimum wage.

The majority of courts, however, simply focus on whether or not a plaintiff was *actually* required to make a repayment, finding that there can be no minimum wage violation if a repayment provision is never triggered. *See, e.g., Franks v. MKM Oil, Inc.*, No. 10 C 13, 2010 WL 3613983, at *4 (N.D. Ill. Sept. 8, 2010) (finding that plaintiff did "not plead any facts that demonstrate her repayment. . . ever caused her to earn less than the minimum wage in a given workweek. Therefore, [plaintiff] fails to state a claim . . . for violation of its FLSA obligations with regards to paying her wages that 8 were "free and clear."); *New York Taxi Workers All. v. Uber Techs., Inc.*, No. 16 CIV. 4098 (AKH), 2017 WL 10402924, at *1 (S.D.N.Y. Sept. 6, 2017) (Because the plaintiff "specifically concedes that he did not work any week in which his wages fell below minimum wage, his illegal kickback claim fails as a matter of law."); *Platek v. Duquesne Club*, 961 F. Supp. 835, 838–39 (W.D. Pa. 1995) (identifying that employee who actually "receive compensation in excess of the minimum standard" are "not the type of

8

employee that the free and clear regulation was intended to protect"); *Mitchell v. Wells Fargo Bank, N.A.*, No. 220CV02444TLPATC, 2022 WL 19076619, at *9 (W.D. Tenn. Dec. 14, 2022) ("Plaintiffs here do not contend that they had to repay any deficit at termination. The Court therefore finds that there is no factual or legal dispute about whether the Plan's Advance Provision complies with the FLSA. It does."); *Park v. FDM Grp. (Holdings) PLC*, No. 16 CV 1520-LTS, 2017 WL 946298, at *4 (S.D.N.Y. Mar. 9, 2017), order vacated in part on reconsideration sub nom. *Park v. FDM Grp., Inc.*, No. 16-CV-1520-LTS, 2018 WL 4100524 (S.D.N.Y. Aug. 28, 2018) (dismissing a "free and clear" claim where the plaintiff failed to allege that she was actually subjected to any deduction from her paychecks for the termination fee); *Cudnik v. W.L. York, Inc.*, No. CV H-20-2998, 2021 WL 3674972, at *2 (S.D. Tex. Feb. 5, 2021) ("Kickbacks are not per se illegal, but only when such deductions deprive an employee of the federally mandated minimum wage or overtime pay."); *Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342 (JGK), 2022 WL 596831, at *6 (S.D.N.Y. Feb. 25, 2022) ("An employee has a cause of action arising out of an employer's failure to comply with FLSA tip credit requirements only if, without the tip credit, the employee's compensation would fall short of the minimum wage").

      Finally, Plaintiff's citations to *Thomas v. County of Fairfax* and *Hawks v. City of Newport News, Va.* are not relevant. Both *Thomas* and *Hawks* involved a determination of whether plaintiffs were paid on a "salary basis" for purposes of the FLSA's executive exemption (for which the Defendant maintained the burden of proof). *Thomas v. Cnty. of Fairfax*, Va., 803 F. Supp. 1142, 1144 (E.D. Va. 1992), aff'd sub nom. *Allen v. Cnty. of Fairfax*, Va., 16 F.3d 408 (4th Cir. 1994); *Hawks v. City of Newport News, Va.*, 707 F. Supp. 212, 214 (E.D. Va. 1988). 29 C.F.R. § 541.118 expressly states that to be considered a "salary basis," payment cannot be

9

"subject to reduction." Because the plaintiffs' paychecks were "subject to reduction" in variation with the number of hours worked, the court found plaintiffs were not paid on a "salary basis." *Id*. 29 C.F.R. § 531.35 does not have any comparable or express "subject to reduction" test, and the FLSA's minimum wage requirement simply states that an employer "shall pay to each of his employees . . . $7.25 an hour." 29 U.S.C.A. § 206. Defendant has complied with this. Plaintiff cannot decouple the "free and clear" language of 29 C.F.R. § 531.35 from the FLSA's requirement to pay minimum wage – a failure to pay "free and clear" must result in a minimum wage violation to be actionable.

WHEREFORE, Defendant, by counsel, requests that this Court grant Defendant's Motion to Dismiss, dismiss Count III with prejudice, and for all other relief this Court deems just and proper.

Respectfully Submitted,

By Counsel

　/s/　Zach Miller　
Zach Miller, Esq. (VSB No. 85860)
Dirk McClanahan, Esq. (VSB No. 81208)
McClanahan Powers, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Tel: (703) 520-1326
Fax: (703) 828-0205
Email: zmiller@mcplegal.com
　　　　dmcclanahan@mcplegal.com
*Counsel for Smoothstack, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023, the foregoing *document* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Zach Miller

10