IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUSTIN O'BRIEN, on behalf of himself          )
and all others similarly situated,             )
                                               )
        Plaintiff,                             )
                                               )
                v.                             )        Civil Action No. 1:23-cv-491 (RDA/LRV)
                                               )
SMOOTHSTACK, INC.,                             )
                                               )
        Defendant,                             )
_____)

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendant Smoothstack Inc.'s ("Defendant") Motion to Dismiss (Dkt. 21) and Plaintiff Justin O'Brien's ("Plaintiff") Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (Dkt. 32). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition.

Considering Defendant's Motion to Dismiss (Dkt. 21), Defendant's Memorandum in Support (Dkt. 22), Plaintiff's Opposition (Dkt. 27), and Defendant's Reply (Dkt. 28), as well as Plaintiff's Motion for Court Authorized Notice (Dkt. 32), Plaintiff's Memorandum in Support (Dkt. 33), Defendant's Opposition (Dkt. 39), and Plaintiff's Reply (Dkt. 40), it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 21) is GRANTED, and Plaintiff's Motion for Court-Authorized Notice (Dkt. 32) is GRANTED-IN-PART and DENIED-IN-PART for the reasons that follow.

## I. BACKGROUND

Before setting forth the factual and procedural history of the instant case, the Court will provide an overview of the statutory and regulatory background relevant to the instant motions.

### A. The Fair Labor Standards Act

Congress enacted the Fair Labor Standards Act ("FLSA") to put an end to "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202(a), and to ensure that workers receive "a fair day's pay for a fair day's work," *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). The "FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). The FLSA requires that "employers pay their employees at least the federal minimum wage and provide them overtime in the amount of one and one-half times their regular rate of pay for each hour worked beyond forty hours in a given work week." *Ketner v. Branch Banking & Tr. Co.*, 143 F. Supp. 3d 370, 374 (M.D.N.C. 2015) (citing 29 U.S.C. §§ 206(a)(1), 207(a)(1)). Pursuant to the Department of Labor's guidance with regard to the FLSA, an employer must also pay wages "free and clear," meaning that:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the [FLSA] will not be met where the employee "kicks-back" directly or indirectly to the employer or another person for the employer's benefit the whole or part of the wage delivered to the employee.

29 C.F.R. § 531.35. A "free and clear" claim is only cognizable where the effect of the condition complained of would actually reduce the employees' wages below minimum wage. *Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2010 WL 3613983, at *4 (N.D. Ill. Sept. 8, 2010).

2

The FLSA also contains a collective action provision that allows employees to bring collective actions against their employers on behalf of themselves and those similarly situated. 29 U.S.C. § 216(b). The purpose of this provision is "to allow workers to lower individual costs to vindicate rights by the pooling of resources," and to increase judicial efficiency. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Gagliastre v. Capt. George's Seafood Rest., LP,* No. 2:17CV379, 2018 WL 9848232, at *2 (E.D. Va. Mar. 13, 2018), *modified on clarification*, No. 2:17CV379, 2018 WL 9848233 (E.D. Va. June 14, 2018).

B. Factual Background[1]

On April 13, 2023, Plaintiff commenced this action on behalf of himself and all others similarly situated, seeking unpaid minimum wages and unpaid overtime pay pursuant to the FLSA, a declaratory judgment that Defendant's practices are illegal, and backpay. Three other individuals have since "opted in" to this case. Dkt. Nos. 31; 41. Defendant owns and operates a staffing company that recruits information technology ("IT") workers ("Recruits") who are in the early stages of their careers, provides them with training, and then places them with new clients mainly in Fortune 500 companies. Dkt. 19 ¶ 1. Once the Recruits are placed with clients, they become "Consultants." *Id.* ¶ 3

Plaintiff was employed by Defendant beginning in the Spring of 2020. *Id.* ¶ 29. Plaintiff alleges that Defendant recruits young professionals with promises of jumpstarting their careers but does not live up to those promises. For example, Plaintiff alleges that Recruits are told that they will receive paid training followed by placement at a Fortune 500 company. *Id.* ¶¶ 1-2. But

---

[1]For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within Plaintiff's Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff contends that, in reality, Defendant requires that Recruits complete "14-15 weeks" of training, for which the first 2-3 weeks of training is unpaid, and the rest is underpaid. *Id.* ¶¶ 8; 11; 64; 139.  During the first 2-3 weeks of training, Plaintiff claims that Recruits work more than 40 hours, and that company-wide policy does not allow them to record their hours, regardless of how many hours are worked. *Id.* ¶ 126.  Plaintiff further alleges that during the rest of the training period, Recruits are paid minimum wage for 40 hours a week, though they often work many more hours than that. *Id.* ¶¶ 9, 11, 63, 65-67, 101-03.  For instance, Plaintiff claims that Recruits can work more than 80 hours a week and are required to: (i) attend online classes after work hours; (ii) attend meetings before normal business hours; and (iii) complete weekend assignments. *Id.* ¶¶ 8, 103-21.  Plaintiff also claims that Recruits work around the clock to complete various assignments, and that they were required to perform their own research to teach themselves how to complete the assignments.  Dkt. 33 at 6-7.  However, Plaintiff alleges that their pay is capped at 40 hours per week.  Dkt. 19 ¶ 101.  Thus, Plaintiff claims that Recruits are paid under minimum wage. According to Plaintiff, the Training Program is the same for all Recruits nationwide. *Id.* ¶¶ 6-9. Plaintiff also alleges that, during these long hours of training, Recruits did not receive any "generally marketable" training, credentials, licenses, or degree upon completion as the training focused heavily on Defendant's "own needs."  Dkt. 27 at 1.

Further, as part of the program, Plaintiff alleges that Defendant requires that Recruits sign a Training Repayment Agreement Provision ("TRAP") at various stages of their employment. Plaintiff alleges that Recruits are first required to sign a TRAP shortly after they are hired as a condition of their continued employment.  Dkt. 19 ¶¶ 16-17.  The TRAP provides that Recruits are required to bill 4,000 hours of client work, approximately two years of full-time work, before they have met their obligation to Defendant.  *Id.*  If a Recruit fails to abide by the TRAP, he or she is

4

required to pay Defendant a penalty in the range $24,000-$30,000.  *Id.*  The TRAP states that the purpose of this penalty is to offset Defendant's costs for training the Recruits as well as "marketing[] and on-boarding," the "cost to train replacements, the cost associated with interruption of work on a project, loss of goodwill, and potentially, loss of income generating projects."  *Id.*  ¶¶ 127, 149-51.  Thus, Plaintiff contends that his paycheck and the paychecks of those in his putative collective are contingent upon remaining employed at Defendant through the next pay period.  Once Recruits become Consultants, and before they are placed with one of Defendant's clients, they must sign an Employment Agreement that contains another TRAP that is nearly identical to the initial TRAP.  *Id.*  Plaintiff alleges that, as a result of the TRAP, Recruits cannot quit their jobs during the training and that Consultants cannot quit their job during their first few years working with a client without paying thousands of dollars in penalties.  Dkt. 33 at 8.  As a result, Plaintiff claims that his wages and the wages of those similarly situated were not paid "free and clear" in violation of the FLSA.  Dkt. 19 ¶ 129.

Plaintiff also claims that, due to the TRAP, both Recruits and Consultants live under threat that their wages will be scaled back if they quit or if they are fired for cause.   Plaintiff further alleges that Defendant warns Recruits and Consultants that it will sue to enforce the TRAP.   Dkt. 33-2 ¶ 17 ("O'Brien Decl.").  Thus, according to Plaintiff, the imposition of the TRAP brings Recruits' and Consultants' wages well below minimum wage.  Dkt. 19 ¶¶ 141, 147-48.  Finally, Plaintiff alleges that Defendant uses coercive tactics to pressure its workers to sign broad separation or settlement agreements that restricts them from disclosing the contents of their agreements and their experiences working for Defendant.  *Id.* ¶ 5.

## C. Procedural Background

Plaintiff filed his initial complaint on April 13, 2023, on behalf of himself and all other similarly situated workers.  Dkt. 1.  On May 12, 2023, Defendant filed its first Motion to Dismiss. Dkt. 13.  On May 23, 2023, the parties jointly stipulated to dismiss Counts III, V, and VI of the initial complaint, and on May 25, 2023, Plaintiff filed his Amended Complaint. Dkt. 19.  On June 6, 2023, Defendant filed a Motion to Dismiss Count III of Plaintiff's Amended Complaint, Dkt. 21, along with its Memorandum in Support, Dkt. 22.  Plaintiff filed his Opposition on June 20, 2023 and Defendant filed its Reply on June 26, 2023.  On July 31, 2023 Plaintiff filed a Notice of Consent to Join as a Party Plaintiff, Dkt. 31, to add L. Nguyen and O, Ejini as opt-in Plaintiffs in the instant litigation.

Plaintiff filed his Motion for Court Authorized Notice, Dkt. 32, on July 31, 2023. Defendant filed a Consent Motion for Extension of Time to file its Response on August 11, 2023, Dkt. 37, and the Court granted the motion on August 14, 2023, Dkt. 38.  Defendant filed its Response on August 28, 2023, Dkt. 39.  Plaintiff filed a Reply in support of his Motion for Court Authorized Notice on September 11, 2023, Dkt. 40, and on October 10, 2023, Plaintiff filed a Notice of Consent to Join as a Party Plaintiff, Dkt. 41 to add Wesley Clements as an opt-in Plaintiff in this litigation.

## II. DEFENDANT'S MOTION TO DISMISS

### A. Standard of Review

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).   In

reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations

contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor.   *E.I. du*

*Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

To be sure, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,'

nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'"

*Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v.*

*Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).   Typically, "courts may not look beyond the

four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp.

3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d

500, 508 (4th Cir. 2015)).   Nonetheless, "courts may consider . . . documents attached to the

complaint . . . 'so long as they are integral to the *complaint* and authentic.'"   *Hugler v. Vinoskey*,

No. 6:16-CV-00062, 2017 WL 1653725, at *5 (W.D. Va. May 2, 2017) (quoting *Philips v. Pitt*

*Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

## B. Analysis

In his Amended Complaint, Plaintiff brings four claims against Defendant. Defendant

seeks to dismiss only Count III for failure to state a claim and for lack of standing.   Count III of

the Amended Complaint asserts that Defendant failed to pay Plaintiff and those similarly situated

their wages "free and clear" in violation of the FLSA.   Dkt. 19 ¶ 211-224.   Defendant first moves

the Court to dismiss Count III for lack of standing because Plaintiff alleges a "hypothetical

minimum wage violation" which is insufficient to establish injury-in-fact.   Dkt. 22 at 5.

Alternatively, Defendant contends that the Court should dismiss Count III for failure to state a

claim because Plaintiff did not plausibly allege that Defendant "actually caused Plaintiff to receive

less than minimum wage" as is required under the FLSA.  *Id.* at 7.  In contrast, Plaintiff argues that his injury is not hypothetical because, due to the TRAP, his salary could be scaled back if he did not remain employed through the next pay period.  Under these circumstances, according to Plaintiff, his wages were not paid "free and clear" or "finally and unconditionally" as required under the FLSA.  Dkt. 27 at 5.  Plaintiff further asserts that the threat of incurring a debt is also a tangible harm that satisfies Article III standing.  *Id.* at 6.  Finally, Plaintiff argues that, as he alleges in his Amended Complaint, he did not receive his wages free and clear during any pay period, he has sufficiently stated a claim "even absent an allegation that Plaintiff's compensation actually caused Plaintiff to receive less than minimum wage."  *Id.* at 8 (citing *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 530 (6th Cir. 2017).  Because Defendant's standing argument affects the Court's ability to hear the instant civil action, the Court will first address this argument.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  The doctrines of standing and ripeness spring from this constraint.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  As the party invoking the Court's jurisdiction, Plaintiff bears the burden of establishing both.  *The Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008).

"[T]he standing inquiry asks whether a plaintiff had the requisite stake in the outcome of a case 'at the outset of the litigation.'"  *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)).  To have standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.*"  TransUnion LLC*

*v. Ramirez*, 594 U.S. 413, 422-23 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).   Establishing an "injury in fact" requires a plaintiff to demonstrate "an invasion of a legally protected interest," *Lujan*, 504 U.S. at 560, and "that the dispute is 'traditionally thought to be capable of resolution through the judicial process,'" *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (quoting *Flast v. Cohen*, 392 U.S. 83, 97 (1968)).   To be "concrete," the injury "must actually exist"—meaning it is "real" and "not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). To be imminent, the "threatened injury" must "be *certainly impending*"; "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations omitted).   Where "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC*, 594 U.S. at 438 (internal citation omitted).   In collective actions, "[e]very class member must have Article III standing in order to recover individual damages" and "must maintain their personal interest in the dispute at all stages of litigation." *Id.* at 431.

The Court finds that here there is no actual controversy between the parties.   The gravamen of Plaintiff's allegations regarding Count III is that, due to the operation of the TRAP repayment provision, Plaintiff's wages were not paid unconditionally, and Plaintiff feared he could incur a debt due to the provision.   While Plaintiff cites to multiple cases to support his position that "failing to pay employees on time is a redressable minimum wage violation" even if it is later remedied, Dkt. 27 at 4 (citing *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *1 (N.D.W. Va. Dec. 4, 2019)), in almost all of those cases the plaintiffs had been actually deprived of their wages during the relevant pay period.   However, here, Plaintiff has stipulated that at all times during and after the training period, he was paid minimum wage for 40 hours per week. Dkt. Nos. 19 ¶¶ 175-76; 27 at 6.

The only case that Plaintiff cites where there was a comparable alleged deprivation of wages is *Ketner v. Branch Banking and Trust Company*, 143 F.Supp.3d 370 (M.D.N.C. 2015). In *Ketner*, the plaintiffs challenged a similar TRAP provision in their employment contracts arguing that it violated the FLSA's minimum wage requirement and sought a declaratory judgment finding the same. *Ketner*, 143 F.Supp.3d at 375-376. The defendant in *Ketner* argued that one of the plaintiffs lacked standing as he had not paid back any portion of his obligation under the TRAP. *Id.* at 382. The court in *Ketner*, however, still found Article III standing based in part on the defendant's *attempts* to collect from the plaintiff and the fact that defendant had previously successfully enforced the repayment provision against other employees. *Id.* at 383. Thus, the *Ketner* Court held that the defendant's activities, such as sending collection letters, created "'an objective and reasonable apprehension of future litigation' regarding his alleged payment obligations" such that the plaintiff's injury was not hypothetical. *Id.* Here, Plaintiff has alleged that Defendant has initiated litigation against other employees to recover repayment under the TRAP. Dkt. 19 ¶ 25. Unlike in *Ketner*, however, Plaintiff has not alleged that Defendant has taken any steps against *him*, or that Defendant has ever *actually* collected money from individuals pursuant to the TRAP. Further, Plaintiff concedes that he has not resigned, nor has he been terminated for cause. These facts together do not create "an objective reasonable apprehension of future litigation." *Ketner*, 143 F.Supp.3d at 383. Also relevant here, Plaintiff has not alleged that Defendant has sent Plaintiff any demand letters or threatened litigation against the Plaintiff. And, as Plaintiff does not allege that he has resigned or been terminated for cause, Defendant could not possibly pursue repayment under the TRAP. While the Fourth Circuit has recognized that the threat of litigation can potentially satisfy Article III standing, Plaintiff's current allegations are too speculative to plausibly show that he faces the threat of litigation. *Volvo Constr. Equip. N. Am.,*

*Inc. v. CLM Equip. Co.*, 386 F.3d 581, 593-94 (4th Cir. 2004).   Thus, under these circumstances Plaintiff has only alleged a hypothetical injury which is insufficient to confer standing.

Plaintiff argues, in the alternative, that his belief that he incurred a debt is sufficient to confer Article III standing.   Again, the Court is unconvinced.   In support of his position, Plaintiff relies on *HHGREGG*, 873 F.3d 523 at 535.   In *HHGREGG*, the Sixth Circuit found that a repayment policy violated the FLSA's free and clear provision because the employer's written policy provided that employees must make immediate repayment of "draw" wages upon termination.   *Id.* at 534.   Draw wages were wages that were advanced to employees when their commission fell below minimum wage, and the obligation to repay continued after termination for any reason.   *Id.* at 534.   Thus, in *HHGREGG*, even if the employer never "demanded repayment in practice, an employee may believe he owes a debt to the company for which he could be made responsible at a later date."   *Id.*   The court recognized that "[i]ncurring a debt, or even believing that one has incurred a debt, has far-reaching practical implications for individuals.   It could affect the way an individual saves money or applies for loans."   *Id.* at 535.   The TRAP in Plaintiff's case is distinguishable.   First, *HHGREGG* involved draw payments which are not at issue here.   Second, the language in *HHGREGG*'s TRAP did not have any limitations for when the repayment provision was activated, and workers could be subject to the provision for any reason upon termination.   *Id.*   Defendant's TRAP contains specific circumstances for which Plaintiff could believe he would incur a debt—that he resigns or is fired for cause—neither of which have occurred in this case.   While it is true that an employee who has been fired for cause or resigns may have experienced legitimate harm by believing that they incurred a debt, even if the debt is never collected, that is simply not the case here.   Thus, Plaintiff simply does not have a stake in this claim.

In sum, the Court finds that Plaintiff has not alleged a sufficient injury to confer Article III standing for Count III of the Amended Complaint.  Accordingly, the Motion will be granted and Count III will be dismissed.[2]

### III. PLAINTIFF'S CONDITIONAL CERTIFICATION MOTION

#### A. Standard of Review

District courts in the Fourth Circuit and other circuits generally follow a two-step process for certifying a FLSA class action.  In the first step, the court decides whether to conditionally certify the class and provide notice to potential class members.  *Winks v. Va. Dep't of Transp.*, No. 3:20-cv-420-HEH, 2021 WL 2482680, at *2 (E.D. Va. June 17, 2021).  In the second step, the court determines whether the class should be de-certified based on the discovery that has been undertaken.  *Id.*

Defendant urges the Court to reject this two-step process and instead follow the Fifth Circuit's approach set forth in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), and recently adopted in *Mathews v. USA Today Sports Media Grp.*, LLC, No. 1:22-cv-1407, 2023 WL 3676795 (E.D. Va. Apr. 14, 2023).  However, this Court agrees with Plaintiff that the *Mathews* opinion is contrary to convincing authority as three district courts in the Fourth Circuit who have considered the issue since *Matthews* have declined to follow its reasoning.  *See Hernandez v. KBR Servs., LLC*, No. 3:22-CV-530-HEH, 2023 WL 5181595, at *6 (E.D. Va. Aug. 11, 2023) (declining to follow *Swales* and *Matthews* and applying the two-step approach); *see Jean-Francois v. Smithfield Foods, Inc.*, No. 7:22-CV-63-D, 2023 WL 4424068, at *2 (E.D.N.C. July 10, 2023) (same); *Firestone v. Food Concepts, LLC*, No. 2:22-CV-04020-BHH, 2024 WL 578454, at *3

---

[2] Because the Court lacks subject matter jurisdiction over Count III due to lack of standing, it will not address the merits of the claim, and Defendant's Alternative Motion to Dismiss for Failure to State a Claim (Dkt. 21) will be denied as moot.

(D.S.C. Feb. 13, 2024) (same).  Accordingly, this Court will abide by the two-step process, as myriad courts in the Fourth Circuit have.  *See, e.g.*, *Chapman v. Saber Healthcare Grp.*, LLC, 623 F. Supp. 3d 664, 672-73 (E.D. Va. 2022) (using the two-step procedure); *Thomas v. Maximus*, No. 3:21-cv-498, 2022 WL 1482010, at *3-*4 (E.D. Va. May 10, 2022) (declining the invitation to follow the *Swales* procedure); *Winks*, 2021 WL 2482680, at *2 n.3 (same); *Santos v. E&R Servs., Inc.*, No. DLB-20-2737, 2021 WL 6073039, at *3-*4 (D. Md. Dec. 23, 2021) (same); *Ison v. MarkWest Energy Partners, LP*, No. 3:21-333, 2021 WL 5989084, at *3 (S.D. W. Va. Dec. 17, 2021) (same).

Under the two-step process, the Court first decides whether Plaintiffs have made a sufficient factual showing that certification is warranted.  For purposes of evaluating Plaintiff's motion for court-authorized notice, the Court only evaluates whether Plaintiff has made the "modest factual showing" necessary under the relevant legal standard.  *Chapman*, 623 F. Supp. 3d at 672.  Accordingly, the Court examines the facts as presented by Plaintiffs' motion to determine whether they can make that showing.  Plaintiff must set forth "more than vague allegations with meager factual support regarding a common policy to violate the FLSA."  *Smith v. Smithfield Foods, Inc.,* No. 2:21-cv-194, 2021 WL 6881062, at *6 (E.D. Va. Dec. 21, 2021) *(*quoting *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 548 (E.D. Va. 2009)) *report and recommendation adopted,* No. 2:21-cv-194, 2022 WL 407378 (E.D. Va. Feb. 9, 2022).

Ultimately, the Court retains discretion to decide whether to conditionally certify Plaintiff's proposed collective action.  *Edwards v. Optima Health Plan*, No. 2:20-cv-192, 2021 WL 1174724, at *3 (E.D. Va. Mar. 29, 2021).  In so doing, the Court "need not engage in resolving factual disputes, decide substantive issues going to the merits of the case, or make credibility determinations. . . ."  *McNeil v. Faneuil, Inc.*, No. 4:15CV81, 2016 WL 11673838, at *3 (E.D.

Va. Aug. 3, 2016) (cleaned up).   What matters is whether Plaintiff has submitted evidence "establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exists." *Sharer v. Tandberg, Inc.*, No. 1:06-cv-626, 2006 WL 2988104, at *2 (E.D. Va. Oct. 17, 2006) (cleaned up).

## B.  Analysis

### i. Similarly Situated

Plaintiff proposes conditional certification of and notice to "all persons who participated in [Defendant's] Training Program and/or signed an agreement containing a TRAP between April 13, 2020, through the date on which the Court grants this motion." Dkt. 40 at 12 n. 6.  According to Plaintiff, the facts he presents demonstrate that he meets his burden of showing "similarly situated" plaintiffs, such that conditional certification is warranted.  Specifically, he contends that the facts show that potential plaintiffs are subject to a "common policy or plan" that "violate[s] the FLSA" by "failing to pay minimum wages, overtime compensation, and all wages free and clear." Dkt. 33 at 14.  Defendant disagrees.  Defendant argues that, under any standard, Plaintiff's motion is insufficient to establish that there are "similarly situated" plaintiffs.  Defendant also argues that Plaintiff's proposed notices are improper.

To meet its burden to have the Court authorize notice and conditionally certify the putative FLSA Collective, Plaintiff must show that potential plaintiffs are "similarly situated." *Winks*, 2021 WL 2482680, at *2.  In determining whether potential plaintiffs are similarly situated, the "primary focus . . . is on legal issues[,]" and "plaintiffs' and prospective class members' circumstances do not need to be factually identical." *Edwards*, 2021 WL 1174724, at *4.  The FLSA does not define the terms "similarly situated" and the Fourth Circuit has not announced a test to determine whether individuals are "similarly situated" for purposes of collective action membership." *Firestone v.*

*Food Concepts*, LLC, No. 2:22-CV-04020-BHH, 2024 WL 578454, at *5 (D.S.C. Feb. 13, 2024).

However, district courts within the Fourth Circuit have held that to show that individuals are

similarly situated, Plaintiff "must demonstrate that '[he] and potential plaintiffs were victims of a

common plan or policy' that violated the FLSA." *Yerby v. City of Richmond, Va.*, No. 3:19-cv-

393, 2020 WL 602268, at *3 (E.D. Va. Feb. 7, 2020) (quoting *Meeker v. Med. Transp., LLC*, No.

2:14-cv-426, 2015 WL 1518919, at *3 (E.D. Va. April 1, 2015)); *Hughes v. NVR, Inc.*, No.

121CV1018RDAIDD, 2022 WL 4856197, at *5 (E.D. Va. Sept. 30, 2022).  While the standard is

"fairly lenient," it does require more than bare assertions like relying solely on job descriptions to

show that individuals are similarly situated.  *Roldan v. Bland Landscaping Co., Inc.*, 341 F.R.D.

23, 28 (W.D.N.C. 2022).

Here, Plaintiff contends that he and all members of the putative class are similarly situated

because (1) they all completed the same Training Program;[3] (2) they all were subjected to unlawful

timekeeping policies and practices during Phase 1 of the Training Program; (3) they all were

subjected to Defendant's compensation policies limiting pay to 40 hours a week during Phase 2 of

the Training Program; and (4) they all signed agreements with Defendant containing a TRAP.[4]

Plaintiff has submitted several exhibits providing factual support for his allegations including: (1)

declarations detailing the uniform training program requirements and required off-the-clock work;

(2) a company FAQ sheet showing that he and other employees' were subject to a compensation

---

[3] Plaintiffs are seeking certification for two phases of the training program: the first three weeks of the Training Program and the remaining weeks of the Training Program.  Plaintiff refers to these periods as the "Unpaid Period" and the "Underpaid Period" respectively while Defendant refers to these periods as the "Application Phase" and the "Training Phase."  For ease of reference, the Court will refer to the first three weeks of the Training Program as Phase 1 and the remainder of the Training Program as Phase 2.

[4] Given the Court's determination that Count III will be dismissed, the Court will not analyze Plaintiff's arguments with respect to the legality of the TRAP provision.

policy such that they did not receive any pay during Phase 1 and that their hours were "capped at 40 hours per week, including weekends" during Phase 2; (3) a declaration from Plaintiff listing overtime hours worked during both Phases and asserting that Defendant reprimanded him for entering more than 40 hours per week in the timekeeping system during Phase 2; and (4) declarations asserting that Defendant knew or should have reasonably known that employees were working greater than 40 hours.  Dkt. 33 at 11-19.

Upon consideration of the available facts, the Court finds that Plaintiff has offered sufficient evidence to demonstrate a "modest factual showing" that the proposed collective is "similarly situated" for purposes of the collective action at this lenient stage.  First, Plaintiff provided evidence that Defendant maintains written policies related to time keeping and compensation for its employees that are uniformly applied.  Under Defendant's policies during Phase 1 of the training program, employees are not paid until their fourth week under the program, and during Phase 2, their hours are capped at 40 hours and the policy affirms that they will not be paid for extra work on weekdays or weekends.  Dkt. Nos. 19 ¶¶ 101-02; 19-3 at 2 (Company Frequently Asked Questions Sheet) (Q: "Do I get paid for extra work on weekdays/weekends?" A: "No. . . .").  Defendant does not combat Plaintiff's assertion that all Recruits and Consultants are subject to the same company-wide payment policy that caps payment at 40 hours per week regardless of hours *actually* worked.  Courts have found that where defendants have a policy of not paying employees overtime even where they work over 40 hours in a week, conditional certification is appropriate.  *Dearman v. Collegiate Hous. Servs., Inc.*, No. 517CV00057RJCDCK, 2018 WL 1566333, at *1 (W.D.N.C. Mar. 30, 2018) (granting certification based on uncontested statement that defendant had implemented "a centralized 'no overtime' rule even though employees worked more than 40 hours in a week."); *Carabajo v. APCO Insulation Co. Inc.*, No.

22-CV-04175-PKC-SJB, 2023 WL 3931618, at *7 (E.D.N.Y. June 9, 2023) ("[T]he written policy alone is sufficient to warrant certification—the policy is illegal and it applied to all employees."); *Marshall v. R.J. Reynolds Tobacco Co.*, No. 07-0227-CV-W-RED, 2007 WL 7209939, at *2 (W.D. Mo. Oct. 26, 2007) (granting certification based on "defendant's written company-wide policies"). The Court similarly finds that conditional certification is appropriate given Defendant's uniform compensation policy capping pay at 40 hours per week.

Further, Plaintiff has provided three declarations alleging that Defendant was aware that its workers worked more than 40 hours per week and encouraged them to do so. Dkt. 33-4 ("Ejini Decl.") ¶¶ 9-14; Dkt. 33-3 ("Nguyen Decl.") ¶¶ 8-10; O'Brien Decl. ¶¶ 8-13. All declarants stated that they worked over 40 hours a week, including weekends. Ejini Decl. ¶ 12; Nguyen Decl. ¶¶ 11-12; O'Brien Decl. ¶ 13. Specifically, Declarants Ejini and Nguyen stated that Defendant told them they were expected to begin working between 6 a.m. and 9 a.m. and end at 6 pm. Ejini Decl. ¶ 13; Nguyen Decl. ¶ 7. All three Declarants also stated that the work that they were required to perform required overtime work, as it could not be completed without working more than 40 hours a week. Ejini Decl. ¶ 9; Nguyen Decl. ¶¶ 7, 10; O'Brien Decl. ¶ 13. For example, Plaintiff states that he was required to complete assignments over the weekend in addition to his normal training hours. O'Brien Decl. ¶¶ 7, 11 ("I was given assignments on Friday that were due on Monday"). Additionally, Declarants assert that Defendant did not permit them to accurately record their hours. Notably, Nguyen states that Defendant reprimanded him when he entered 8 hours of weekend work, Nguyen Decl. ¶¶ 14-15, and Ejini states that he was instructed to change his time entry from 8 hours to 0 hours for work that he performed on a federal holiday, Ejini Decl. ¶¶ 16-18. Finally, Declarants state that they interacted with various individuals in their cohort from

multiple states and that Defendant required them to complete the same assignments and that they were subject to the same timekeeping and compensation policies.  Ejini Decl. ¶¶ 20-22.

Accordingly, at this stage in the proceedings, the declarations submitted by Plaintiff, in conjunction with Defendant's express policy limiting overtime, is sufficient to establish that potential collective members are similarly situated.  *See LaFleur v. Dollar Tree Stores, Inc.,* No. 2:12-CV-00363, 2012 WL 4739534, at *10 (E.D. Va. Oct. 2, 2012) (finding declarations sufficient to establish that employees are similarly situated); *Thomas*, 2022 WL 1482010, at *5 (same); *Meeker v. Med. Transp., LLC*, No. 2:14-CV-426, 2015 WL 1518919, at *4 (E.D. Va. Apr. 1, 2015) (same).

Defendant argues in response that the Court should deny Plaintiff's request for conditional certification because: (1) during Phase 1 of the training program the proposed collective are not employees of the Defendant and thus not entitled to wages; and (2) the "decentralized and individualized" nature of Plaintiff's claim for overtime wages make collective action inappropriate.  The Court finds Defendant's arguments unavailing at this juncture.  First, whether the proposed class members are employees of Defendant during Phase 1 is a substantive issue and courts do not resolve substantive issues that go to the merits of the case at the conditional certification stage.  *LaFleur v. Dollar Tree Stores, Inc.,* No. 2:12-CV-00363, 2012 WL 4739534, at *10 (E.D. Va. Oct. 2, 2012); *see also Stone v. SRA Int'l, Inc.,* No. 2:14CV209, 2014 WL 5410628, at *5 (E.D. Va. Oct. 22, 2014) ("Defendant's focus on Plaintiff's alleged failure to prove a violation of the FLSA is inapposite at this [notice] stage.").  Further, the cases that Defendant cites where conditional certification was denied, are easily distinguishable.  For example, in *Hughes*, this Court denied conditional certification where the plaintiffs attempted to rely on a "*de facto*" policy to show that the defendant required plaintiffs to work overtime without pay even

18

though the written policy complied with the FLSA overtime provisions. *Hughes*, 2022 WL 4856197, at *5. Here, however, Plaintiff relies on an express written policy that caps workers' pay at 40 hours a week, and such an express policy has been found to be sufficient to show potential collective members are similarly situated.

Additionally, Defendant relies on *Purdham v. Fairfax County Public School*, 629 F. Supp. 2d 544 (E.D. Va. 2009) for the proposition that where individual determinations will predominate, conditional certification is inappropriate. In *Purdham*, the proposed collective consisted of different coaches whose work varied widely between sports, and between coaches at different schools. *Id.* at 550. Whether the proposed collective members in *Purdham* were employees under the FLSA depended upon the number of hours worked and how much they were paid. Further, there was no common plan or policy as to their specific hours, and the court found that no collective could be certified. *Id.* at 551-552. Thus, it was not the nature of individualized damages in and of itself that led the court in *Purdham* to deny coverage but the specific facts before the court. *Id.* at 552. Here, the types of individualized determinations raised by Defendant do not rise to the same level as those in *Purdham*. Defendant does not contend that there was no common policy for how often or how much workers were paid or that there was a lack of uniform management structure with varying local policies. Rather, Defendant asserts that the workers' assignments may vary based on the various subject matters to which they were assigned and thus "the number of hours spent 'researching' at home will inevitably be a very individualized assessment." Dkt. 39 at 10. A variation in damages amongst individuals is not sufficient to defeat collective certification. *See Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 577 (D. Md. 2014) ("[T]he possibility of individualized [damages] inquiries is not a basis for denying conditional certification."); *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 309 (D. Md. 2014) ("In a wage-and-hour action, there

19

are always going to be differences among workers' hours, but that is not a reason to deny certification . . ."); *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008) (noting that the "similarly situated" requirement "is not to say that there can be no differences among class members or that an individualized inquiry may not be necessary in connection with fashioning the specific relief or damages to be awarded to each class member").

Accordingly, the Court finds that Plaintiff has met the "fairly lenient" conditional certification standard. While Defendant raises valid concerns regarding the individualized nature of Plaintiff's and the Putative Collective Members' claims, those concerns are better addressed in the later stages of this litigation under a more fact-intensive inquiry. *Thomas*, 2022 WL 1482010, at *6 (holding that "[c]oncerns about the predominance of individualized nature of Plaintiffs' and the Putative Class Members' claims require merits-based analyses that courts wait to tackle during the decertification stage, after notice to potential plaintiffs is finalized and the parties have completed discovery"). Moreover, under the circumstances of this case, the Court finds that it would promote judicial efficiency for the Court and the litigants to allow putative collective action members to proceed in the same action. Therefore, the Court, in its discretion, will grant Plaintiff's Motion for conditional certification with respect to Count I and Count II of the Amended Complaint.[5]

### ii. Notice

As part of the instant Motion, Plaintiff asks the Court to approve his revised proposed notices, Dkt. Nos. 40-2 (Revised Proposed Notice); 40-3 (Revised Proposed Reminder Notice) and approve multiple methods of distribution. In response to Defendant's opposition, the parties

---

[5] As the Court has previously determined that the named Plaintiff lacks standing for Count III (Plaintiff's free and clear claims), the Court will not certify the collective for that claim at this time.

20

conferred regarding Plaintiff's initial proposed notice and were able to reach a compromise. Defendant either agrees to or does not oppose the following aspects of the Revised Notice:

- Notice shall take the form of Plaintiff's Revised Proposed Notice, attached as Exhibit 1, including a QR code, subject to the Court's ruling on the lone remaining dispute;

- Notice shall be sent via U.S. mail and email;

- Notice shall be posted on a standalone website created by Plaintiff with a place to download the Consent to Join form;

- Notice shall be sent to all persons who worked at Defendant at any time between the date three years prior to the date the Court grants Plaintiff's motion to the present, and who participated in Defendant's training program and/or signed a training agreement or employment agreement that includes a repayment provision, which provides the person may not quit or be fired for cause prior to billing a minimum number of hours for a Defendant client;

- Notice will issue to potential collective members who worked for Defendant anytime from three (3) years prior to the date of the Court's order granting conditional certification;

- The notice period shall last 75 days, with the exception of remailings as outlined in the Revised Proposed Notice;

- If the Court rules that a reminder should issue, the reminder shall take the form of the Revised Reminder Notice, attached as Exhibit 2, subject to the Court's ruling on the lone dispute discussed infra;

- Defendant shall provide to Plaintiff's counsel within 14 days of the Court's order a computer-readable list of the following: (1) full name; (2) last known mailing address; (3) last known personal emailing address; (4) dates of employment.

Dkt. 40-1 ("Sagafi Decl."). The areas for which there remains disagreement pertain to: (1) whether notice may be sent via text message or social media; (2) whether Plaintiff may issue a reminder during the opt-in period; (3) whether Plaintiff's Revised Notice and Revised Proposed Reminder may include "Official Court-Authorized Notice" and "United States District Court Eastern District of Virginia"; and (4) what contact information Defendant must disclose. Dkt. 40 at 12-13. The Court will address each in turn.

a. Communication Methods and Schedule

Plaintiff requests to disseminate the notice via mail, email, text message, and through LinkedIn and Instagram. Defendant argues that the Court should limit the notice for distribution through U.S. mail and e-mail. Dkt. 39 at 11. As Plaintiff notes, courts within the Fourth Circuit generally permit FLSA notices to be distributed through text, email, and U.S. mail. *See Thomas*, 2022 WL 1482010, at *8 ("The Court authorizes Notice of the instant suit by mail, email and text message, as courts throughout the Fourth Circuit commonly do."); *see also Biscardi v. Gov't Emps. Ins. Co.*, No. GJH-21-2240, 2023 WL 155238, at *5 (D. Md. Jan. 11, 2023) (authorizing notice by U.S. mail, e-mail, and text message). Thus, the Court does not find a compelling reason to exclude text message as a means of notice in the instant case. *See Millin v. Brooklyn Born Chocolate, LLC,* No. 19CV3346ENVRER, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020) (noting that "[t]here is no credible reason why notice should not be provided by email or text message, especially given the broad remedial purpose of the FLSA."). Therefore, the Court will authorize notice by U.S. mail, email, and text message.

The Court will also authorize Plaintiff to send a reminder notice via email and text message to potential plaintiffs who have not yet returned a Consent to Join form during the first thirty (30) days of the notice period. *See Lupardus v. Elk Energy Servs.*, *LLC*, No. 2:19-cv-00529, 2020 WL 4342221, at *9 (S.D.W. Va. July 28, 2020) ("Recipients may overlook the initial notifications, even in three forms, or become sidetracked from filing their consent form, but a second round helps to ensure that putative class members receive the notice and are reminded to act should they wish to do so."); *see also Thomas*, 2022 WL 1482010, at *8 (authorizing a reminder notice via text message and email).

The Court, however, will not authorize the use of LinkedIn and Instagram to facilitate notice. Plaintiff argues that the nature of the potential collective, "young, tech-savvy professionals," means that traditional means of notice may be less effective. Dkt. 40 at 14-15. Plaintiff further asserts that potential collective members are likely to "maintain an active LinkedIn account and to follow or receive information about [Defendant] via Instagram" making it an appropriate method of distributing the notice. *Id.* Defendant asserts that using social media to distribute the notice would be overly intrusive and result in reputational harms as notice could be sent to "business partners, clients, and other individuals unrelated to this lawsuit." Dkt. 39 at 13. The Court agrees with Defendant that use of LinkedIn and Instagram would be too "intrusive" and also finds that it will likely be duplicative, especially where, as here, Plaintiff has not demonstrated that the other three proposed methods of notifying potential plaintiffs will be ineffective. *Stacy v. Jennmar Corp. of Va., Inc.*, 2021 WL 4787278, at *4 (W.D. Va. Oct. 14, 2021); *c.f. Thomas*, 2022 WL 1482010, at *8 (authorizing notice via mail, email, and text message but denying the plaintiff's request to post notice at the defendant's workplace).

### b. Disclosure of Contact Information

First, as the parties agree that Defendant will provide Plaintiff with potential plaintiffs' (1) full names; (2) last known mailing addresses; (3) last known personal emailing addresses; and (4) dates of employment, the Court will grant that request. Defendant argues, however, that it should not have to provide phone numbers, social media accounts, or the last four digits of potential plaintiff's social security numbers. Dkt. 39 at 15-16. With regard to disclosure of phone numbers, courts in the Fourth Circuit appear to be split, but in recent years courts have repeatedly ordered this disclosure to facilitate notice via text message. *See, e.g.*, *Brown*, 2021 WL 5889707, at *3-4 (granting disclosure of phone numbers without a special showing that mail or email notices were

undeliverable); *Allen v. Cogent Commc'ns*, No. 1:14cv459 (JCC/TRJ), 2014 WL 4270077, at *6 (E.D. Va. Aug. 28, 2014) (same); *Stone v. SRA Intern., Inc.*, 2014 WL 5410628, at *10 (same); *LaFleur*, 2012 WL 4739534, at *12 (same); *Gregory v. Belfor USA Grp., Inc.*, No. 2:12cv11, 2012 WL 3062696, at *6 (E.D. Va. July 26, 2012) (same); *but see Houston v. URS Corp.*, 591 F. Supp. 2d 827, 836 (E.D. Va. 2008) (denying blanket request for disclosure of phone numbers, but noting that if the notice mailed to the putative plaintiffs was returned as undeliverable, then the plaintiffs could request the phone number of those individuals from the defendants so that the plaintiffs could contact them to obtain a mailing address). Thus, as the Court has authorized notice by text message consistent with other district courts within the Fourth Circuit, Plaintiff's request will be granted with respect to known cell phone numbers. Since the Court has not authorized notice via phone call, Defendant will not be required to disclose potential plaintiffs' home phone numbers. *Thomas*, 2022 WL 1482010, at *7 (requiring disclosure of cell phone numbers to facilitate notice via text message but limiting disclosure of potential plaintiffs' home phone numbers). Finally, the Court denies Plaintiff's request for an order directing Defendant to disclose the last four digits of potential plaintiffs' Social Security Numbers, as there is no obvious need for such sensitive and personal information. *Allen*, 2014 WL 4270077, at *6 (denying Plaintiffs' request for last four digits of Social Security numbers); *Thomas*, 2022 WL 1482010, at *8 (same).

### c.  Contents of Notice

Regarding the substance of the Revised Proposed Notice, Defendant argues that "the case caption intimates that Plaintiff's claims are authorized or approved by the Court, which does not maintain the appearance of judicial neutrality." Dkt. 39 at 14. This Court disagrees. Stating that this Court has authorized the conditional certification does not reflect any bias or constitute endorsement of the litigation. *Stacy*, 2021 WL 4787278, at *4 (citing *Byard v. Verizon W. Va.*,

*Inc.*, 287 F.R.D. 365, 376 (N.D.W. Va. 2012); *see also Lewis v. Precision Concepts Grp.*, LLC, No. 1:18CV64, 2019 WL 13143749, at *2 (M.D.N.C. July 29, 2019) (finding that notice stating "court-authorized" and the court's name was "helpful for clarity" and did not "promote the impression of judicial endorsement").   Additionally, the Revised Proposed Notice states clearly that this "Court has not yet made a determination about the merits of Plaintiff's claims and there is no assurance the Court will grant any recovery in the lawsuit," which indicates that the Court has not yet decided the merits of the case.   Therefore, the Court will permit the case caption as written on the Revised Proposed Notice.

In conclusion, the Court will grant in part and deny in part Plaintiff's Revised Proposed Notice Form Schedule, Notice Schedule, and methods of communication.

## IV.   CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 21) is GRANTED; and it is

FURTHER ORDERED that Count III of the Amended Complaint (Dkt. 19)   is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Defendant's First Motion to Dismiss (Dkt. 13) is DENIED as MOOT; and it is

FURTHER ORDERED that Plaintiff's Motion for Court Authorized Notice (Dkt. 32) is GRANTED-IN-PART and DENIED-IN-PART; and it is

FURTHER ORDERED that within fourteen (14) days of the date of this Order, the parties shall, after meeting and conferring, prepare and submit to the Court, for approval, a revised form of notice (and related consent form) and a revised form reminder notice incorporating the Court's rulings delineated elsewhere in this Order; and it is

FURTHER ORDERED that within fourteen (14) days of the date of this order, Defendant shall provide Plaintiff's counsel a computer-readable list of the following information for each individual in the collective of potential plaintiffs: (1) full name; (2) last known mailing addresses; (3) last known cell phone number; (4) last known personal email addresses; (5) work location(s); and (6) dates of employment beginning with the first day of training; and it is

FURTHER ORDERED that Plaintiff may create a website that will host the approved notice and offer a place to download and submit the approved consent to join form; and it is

FURTHER ORDERED that the opt-in period shall extend for seventy-five (75) days from the date of mailing, or if both mail and email notice are undeliverable, thirty (30) days from the date of remailing, or the end of the notice period, whichever is later; and it is

FURTHER ORDERED that Plaintiff may send a reminder notice via email or text to Collective Members who have not yet returned a consent to join form during the first thirty (30) days of the notice period; and it is

It is SO ORDERED.

Alexandria, Virginia
March 28, 2024

/s/

Rossie D. Alston, Jr.
United States District Judge

26