**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| | : | |
| **JUSTIN O'BRIEN,** *on behalf of himself and all others similarly situated* | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | :Civil Action No. 1:23-cv-00491-RDA-LRV | |
| | : | |
| **SMOOTHSTACK, INC.,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>
<u>**PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>

1

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Anderson v. Sara Lee Corp.*,
508 F.3d 181, 191 (4th Cir. 2007) (citing U.S. Const. art. VI, cl. 2)……………………………10

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)…………………………………………..6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 L.Ed.2d 929 (2007)………………………………………………………………6

*Bd. of Supervisors of James Cty. v. Windmill Meadows, LLC*,
287 Va. 170, 184, 752 S.E.2d 837, 845 (2014)…………………………………………..…18

*Campbell v. Bos. Sci. Corp.*,
882 F.3d 70, 74 (4th Cir. 2018)…………………………………………………………………..8

*Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cty. Bd. of Supervisors*,
285 Va. 87, 98, 737 S.E.2d 1, 6 (2013)……………………………………………………………17

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398, 409, 133 S. Ct. 1138, 1147, 185 L. Ed. 2d 264 (2013) ………..……………....15

*Driscoll v. Simsbury Assocs.*,
Civil Action No. 17-cv-12373-ADB, 2018 U.S. Dist. LEXIS 77890, at *19 (D. Mass. May 9,
2018)……………………………………………………………………………………………10

*Esedebe v. Circle 2, Inc.*,
No. 3:20-CV-8-HEH, 2021 WL 232595, at *2 (E.D. Va. Jan. 22, 2021)………………………16

*Franks v. MKM Oil, Inc.*,
No. 10 C 13, 2010 WL 3613983, at *4 (N.D. Ill. Sept. 8, 2010)………………………………16

*Frank D. Gillitzer Elec. Co., Ltd. v. Andersen*,
2010 WI App 31, ¶9, 323 Wis. 2d 754, 760, 780 N.W.2d 542, 545……………………………12

*Hall v. Hall*,
138 S. Ct. 1118, 1129, 200 L. Ed. 2d 399 (2018)…………………………………………………..8

*Milwaukee Area Joint Apprenticeship Training Comm. v. Howell*,
67 F.3d 1333, 1339 (7th Cir. 1995)………………………………………………………….....12

*Moeck v. Gray Supply Corp.*,

No. 03-1950 (WGB), 2006 U.S. Dist. LEXIS 511, at *5 (D.N.J. Jan. 5, 2006)………………11

*Nashef v. AADCO Med*., Inc.,
947 F. Supp. 2d 413, 424 (D. Vt. 2013)………………………………………………………10

*Thole v. U. S. Bank N.A*,
207 L. Ed. 2d 85, 140 S. Ct. 1615, 1622 (2020)……………………………………………16

*TransUnion LLC v. Ramirez*,
210 L. Ed. 2d 568, 141 S. Ct. 2190, 2203 (2021)…………………………………………..13

*S. Carnes, Inc. v. Board of Supervisors*,
252 Va. 377, 383, 478 S.E.2d 295, 299 (1996)……………………………………………..17

*Smith v. Interactive Fin. Mktg. Grp., LLC*,
79 Va. Cir. 158, 165-66 (Cir. Ct. 2009………………………………………………………10

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 339, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016)………………………………………………………………………………………..15

*Garey v. James S. Farrin*, P.C.,
35 F.4th 917, 922 (4th Cir. 2022)……………………………………………………………16

*Walsh v. Ariz. Logistics, Inc.*,
998 F.3d 393, 397 (9th Cir. 2021)……………………………..…………………………….9

**Statues**

29 U.S.C. §§ 206(a), 215(a)(2), (2)……………………………………………………………6

29 U.S.C. §§ 207 and 215(a)(2), (3)…………………………………………………………..6

29 U.S.C. 215(a)(3), and (4)……………………………………………………………………6

29 U.S.C. § 211(c)…………………………………………………………………………...7

Va. Code § 8.01-184…………………………………………………………………………17

Va. Code § 40.1-28.7:8, and (e)………………………………………………………………6

Va. Code § 59.1–200…………………………………………………………………………..9

**Rules**

Fed. R. Civ. P. 12(b)(1), 12(b)(6), and Rule 75 ...........................................................................5

Fed. R. Civ. P. 42(a)(2)…………………………………………………………………………8

COMES NOW, Defendant Smoothstack, Inc. ("Smoothstack" or "Defendant"), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and Rule 7 of this Court's Local Civil Rules, and hereby submits this Memorandum in Support of Defendant's Motion to Dismiss and states as follows:

## I.    BACKGROUND

Smoothstack operates an information technology (IT) training and placement program that provides career opportunities to aspiring software engineers. Individuals that participate in this program, who often have no prior experience in the industry, receive the training and skills necessary to launch a career in the IT industry. Upon completion of the program, these individuals are then placed with clients, often Fortune 500 companies, to begin their new careers.

As identified in the Second Amended Complaint, prior to joining Smoothstack in April 2020, Justin O'Brien ("O'Brien" or "Plaintiff") worked a "low-paying job at a call center." Sec. Am. Compl. ¶ 30. After participating in Smoothstack's training program, Plaintiff acquired the skills necessary to be placed as a developer with Accenture Federal Service ("Accenture") and to begin a new career in a growing industry. Sec. Am. Compl. ¶ 42.  As part of this process, Plaintiff signed a training agreement (the "Training Agreement") (Sec. Am. Compl. Ex. 1) and an employment agreement (the "Employment Agreement") (Sec. Am. Compl. Ex. 2).

Initially, Plaintiff filed a class and collective action Complaint asserting seven (7) causes of action. By stipulation, Plaintiff withdrew three (3) of the original claims, including its FLSA claim for "illegal kickbacks" and Virginia common law claims alleging that the Training Agreements and Employment Agreements were unconscionable and unenforceable. Thereafter, Plaintiff filed a First Amended Complaint, asserting four (4) causes of action arising from alleged violations of the Fair Labor Standards Act ("FLSA").   Count 3 of the Amended

complaint, alleging that Smoothstack violated the FLSA by its "failure to pay wages free and clear" was dismissed.  Nearly a year after filing the initial Complaint, Plaintiff filed a Second Amended Complaint that (a) added nine claims, (b) reasserted the three claims in the original Complaint it withdrew by stipulation (unconscionable contract, and unenforceable contract, and "illegal kickback"), (c) reasserted the "free and clear" claim previously dismissed by the Court, (d) added class action claims for violation of the Virginia Consumer Protection Act ("VCPA") and violation of Va. Code § 40.1-28.7:8, and (e) added an additional FLSA claim for "regular rate violation."

## II.   LEGAL STANDARD

To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, thereby nudg[ing] their claims across the line from conceivable to plausible." *Id*. (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 L.Ed.2d 929 (2007)). While a court must accept the material facts alleged in the complaint as true, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## III.   ARGUMENT

### A.  29 U.S.C § 216 Requires the Dismissal of the Second Amended Complaint.

On July 10, 2024, the United States Department of Labor ("DOL") filed a complaint against Smoothstack in the United States District Court for the Eastern District of New York (the "DOL Lawsuit"). **Ex. 1**. The DOL has asserted claims for (1) failure to pay minimum wage pursuant to 29 U.S.C. §§ 206(a), 215(a)(2), (2) failure to pay overtime pursuant to 29 U.S.C. §§ 207 and 215(a)(2), (3) retaliation pursuant to 29 U.S.C. 215(a)(3), and (4) failure to keep

4

accurate records pursuant to 29 U.S.C. § 211(c). The training repayment provisions, which are the focus of the present lawsuit, are likewise the conceptual basis of the DOL Lawsuit and are referenced throughout. Further, the DOL Lawsuit is not limited to any subset of Smoothstack's current or former employees.  That means the Second Amended Complaint is barred.

Specifically, 29 U.S.C. §216(b)[1] provides as follows:

> The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, **shall terminate upon the filing of a complaint by the Secretary of Labor** in an action under section 17 [29 USCS § 217] in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 6 or section 7 of this Act [29 USCS § 206 or 207] by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 15(a)(3) or 18D [29 USCS § 215(a)(3) or 218d].

Plaintiffs' Second Amended Complaint was filed on July 16, 2024. Prior to its filing, the only claims against Smoothstack that pre-existed the DOL Lawsuit were claims on behalf of 84[2] individuals for alleged (1) failure to pay minimum wage and (2) failure to pay overtime, as well as (3) Justin O'Brien's individual claim for retaliation (i.e., Counts 1, 2, and 4 of the First Amended Complaint). The right to assert any additional claims or for any additional opt-ins to join the present lawsuit terminated on July 10, 2024. As a result, the Second Amended Complaint should be dismissed in conformance with 29 U.S.C. § 216.

---

[1] 29 U.S.C. § 216(c) likewise provides that, "[t]he right provided by subsection (b) to bring an action by or on behalf of any employee to recover the liability specified in the first sentence of such subsection and of any employee to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary."

[2] Additional opt-in/consent forms have been submitted following the filing of the DOL Lawsuit. Because opt-in plaintiffs do not become a party to the case until the consent form is filed, their "right to become a party plaintiff" terminated on July 10th. As a result, their claims are barred.

**B.  <u>Any Surviving Claims Should Be Stayed</u>.**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936). Under similarly inquiries with respect to consolidation of actions pursuant to Rule 42 of the Federal Rules of Civil Procedure, courts determine the appropriateness of consolidation by weighing "the specific risks of prejudice and possible confusion" from consolidation against the risk of inconsistent adjudications, the burden on the parties, witnesses, and judicial resources, the length of time required to independently resolve multiple related actions, and the relative expense of the same. *Campbell v. Bos. Sci. Corp.*, 882 F.3d 70, 74 (4th Cir. 2018).

To the extent any new claims in the Second Amended Complaint are not dismissed, then this matter should be stayed pending resolution of the DOL Lawsuit. Both the claims in the Second Amended Complaint and the DOL Lawsuit predominantly involve the training repayment provision in Smoothstack's employment agreements. From an efficiency standpoint, it makes little sense to litigate two separate cases in two different jurisdictions involving the same issues. Maintenance of separate suits would lead to increased costs, unnecessary use of court resources, and potentially inconsistent rulings. Further, the Department of Labor would need to be significantly involved in both cases. "[O]nce the Secretary decides to sue (whether before or after an employee files suit), the Secretary, like the EEOC, is in "command of the process." *Walsh v. Ariz. Logistics, Inc.*, 998 F.3d 393, 397 (9th Cir. 2021). The Secretary controls both the litigation strategy and disposition of any recovery obtained for the employee. *Id.*

**C.  <u>Plaintiffs' Second Amended Complaint Fails to State a Claim</u>.**

6

To the extent this case is not dismissed, stayed, or consolidated in some manner, Plaintiffs' Second Amended Complaint fails to state a claim as to Counts 3-7, and 9-12.

i.   The VCPA Does Not Apply to an Employer-Employee Relationship.

Counts 10-12 assert claims under the Virginia Consumer Protection Act ("VCPA"). The VCPA prohibits certain "fraudulent acts or practices committed by a **supplie**r in connection with a **consumer transaction**." Va. Code § 59.1–200 (emphasis added). A "supplier" is defined as "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions." *Id*. at § 59.1–198. A "consumer transactions" includes the following:

> 1. The advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes;
>
> 2. Transactions involving the advertisement, offer or sale to an individual of a business opportunity that requires both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged;
>
> 3. Transactions involving the advertisement, offer or sale to an individual of goods or services relating to the individual's finding or obtaining employment;
>
> 4. A layaway agreement, whereby part or all of the price of goods is payable in one or more payments subsequent to the making of the layaway agreement and the supplier retains possession of the goods and bears the risk of their loss or damage until the goods are paid in full according to the layaway agreement;
>
> 5. Transactions involving the advertisement, sale, lease, or license, or the offering for sale, lease or license, of goods or services to a church or other religious body; and
>
> 6. Transactions involving the advertisement of legal services that contain information about the results of a state or federal survey,

7

> inspection, or investigation of a nursing home or certified nursing
> facility as described in subsection E of § 32.1-126.

*Id*.  Plaintiffs' VCPA claims are predicated upon the training repayment provision in the

employment agreements. However, an employment agreement does not constitute a consumer

transaction—i.e., it is not a sale of goods or services for personal, family, or household purposes

between a supplier and a consumer.  *See Smith v. Interactive Fin. Mktg. Grp., LLC*, 79 Va. Cir.

158, 165-66 (Cir. Ct. 2009) ("Whether these statutes provide public policy protections or not,

they are applicable to consumers and not to employees, such as the Plaintiff. Regarding the

[VCPA], the Court holds this statute protects consumers of goods and services, and regulates

suppliers of consumer goods and services. The Plaintiff as an employee, and not a consumer, is

not entitled to protection under the VCPA."); *see also Driscoll v. Simsbury Assocs*., Civil Action

No. 17-cv-12373-ADB, 2018 U.S. Dist. LEXIS 77890, at *19 (D. Mass. May 9, 2018)(finding

that the Massachusetts Consumer Protection Act does not reach "disputes stemming from an

employment relationship" because an employee and employer are not engaged in trade or

commerce with each other); *Nashef v. AADCO Med*., Inc., 947 F. Supp. 2d 413, 424 (D. Vt.

2013) ("there is no apparent good faith basis for extending the VCFA to cover the relationship

between an employer and an employee"). As a result, Counts 10-12 should be dismissed.

      ii.   <u>Plaintiffs' Count XII VCPA Claim Is Preempted</u>.

      The Supremacy Clause of the Constitution renders federal law "the supreme Law of the

Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

*Anderson v. Sara Lee Corp*., 508 F.3d 181, 191 (4th Cir. 2007) (citing U.S. Const. art. VI, cl. 2).

"As a result, federal statutes and regulations properly enacted and promulgated can nullify

conflicting state or local actions." *Id*. Federal law may preempt state law under the Supremacy

Clause  in three ways -- by "express preemption," by "field preemption," or by "conflict preemption. *Id.*

In Count 12, Plaintiffs allege misrepresentations related to the training program, working "extensive overtime for six months without proper compensation," and placement on "bench status awaiting assignment and being [paid] their home state's [] minimum wage." [DE 79; ¶¶ 418-420]. In reliance upon these alleged misrepresentations, Plaintiffs state that they were "subjected to extensive working hours with no pay and overtime pay." *Id*. at ¶ 421. As a result, Plaintiffs seek actual or statutory damages, attorneys' fees, and costs under the VCPA. In *Anderson*, the Court found that claims for breach of contract, negligence, and fraud that were intertwined with claims related to failure to pay wages were preempted by the FLSA. 508 F.3d. at 193. In doing so, the Court identified that the enforcement schemes for these claims were "more generous than those provided in the FLSA enforcement scheme" and that nature of the claims arose from what really amounted to claims for failure to pay wages appropriately. *Id*. Ultimately, the Court concluded that the FLSA contains the exclusive remedies for violations of its mandates. *See also Moeck v. Gray Supply Corp*., No. 03-1950 (WGB), 2006 U.S. Dist. LEXIS 511, at *5 (D.N.J. Jan. 5, 2006) ("Plaintiffs' contentions that Defendants materially misrepresented that its employees would be paid for overtime and concealed the fact . . . that they would be compelled to work additional time without compensation merely are based on Plaintiffs' overtime claims" and were therefore preempted.) The same is true here, as Plaintiffs have simply tried to recast their FLSA claims related to the training program and repayment provisions as VCPA claims.

     iii.    <u>Count 7 "Unlawful Non-Compete" Fails to State a Claim.</u>

In Count 7, Plaintiffs allege that the training repayment provision is an unlawful non-compete. However, the language of the actual training repayment provision does not speak to any restrictions on post-employment competition.

Va. Code § 40.1-28.7:8 defines a "covenant not to compete" as "a covenant or agreement, including a provision of a contract of employment, between an employer and employee that restrains, prohibits, or otherwise restricts an individual's ability, following the termination of the individual's employment, to compete with his former employer." The repayment provision at issue provides that, "In the event that the Employee resigns or is terminated for Cause prior to Commitment Period as defined in section 3.1.f, the Employee shall pay $23,875 to the Company to reimburse the Company for the Training, Marketing, and On-Boarding Cost. (Second Am. Compl. at Ex. 2).

Nothing in this provision prohibits an employee from competing with Smoothstack following the termination of employment. Under this provision, an employee is free to accept work with a competitor following termination of employment. Because nothing in the repayment provision restricts an employee's conduct following separation of employment, or limits who an employee may accept employment from, the repayment provision is not a "covenant not to compete." *See Milwaukee Area Joint Apprenticeship Training Comm. v. Howell*, 67 F.3d 1333, 1339 (7th Cir. 1995) ("Howell's obligation, on the other hand, is not such a covenant; it does not prevent him from working for a competing employer, from working within a certain industry, or from working within a geographic area. It is simply an obligation to repay the cost of his training."); *Frank D. Gillitzer Elec. Co., Ltd. v. Andersen*, 2010 WI App 31, ¶9, 323 Wis. 2d 754, 760, 780 N.W.2d 542, 545 (finding that a reimbursement provision was not a "covenant by [an employee] … not to compete with his or her employer").

**D.** **Plaintiff Has Failed to Establish Standing or State a Claim for Counts 3 and 4.**

Previously, Plaintiffs withdrew its Count 3 FLSA claim for "failure to pay wages free and clear" and its Count 4 FLSA claim for "illegal kickbacks" was dismissed for lack of standing. [DE 18, 44]. Those claims have now been reasserted. The facts set forth in the Second Amended Complaint are nearly identical to those in the First Amended Complaint, except that Plaintiff Skylar Reed alleges that following his resignation from employment, Smoothstack's HR personnel contacted him about repayment of his training expenses. Again, however, Mr. Reed does not, and cannot, allege that he was ever actually forced to repay any sum to Smoothstack or that any wages were ever deducted.

     i.   Plaintiff Has Failed to Establish Standing for Counts 3 and 4.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. A federal court may resolve only "a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2203 (2021). Thus, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (explaining that "the plaintiffs bear the burden of demonstrating that they have standing."). If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id.* In *TransUnion*, the Supreme Court further explained that:

> To appreciate how the Article III "concrete harm" principle operates in practice, consider two different hypothetical plaintiffs. Suppose first that a Maine citizen's land is polluted by a nearby factory. She sues the company, alleging that it violated a federal environmental law and damaged her property. Suppose also that a second plaintiff in Hawaii files a federal lawsuit alleging that the

> same company in Maine violated that same environmental law by polluting land in Maine. The violation did not personally harm the plaintiff in Hawaii.
>
> Even if Congress affords both hypothetical plaintiffs a cause of action (with statutory damages available) to sue over the defendant's legal violation, Article III standing doctrine sharply distinguishes between those two scenarios. The first lawsuit may of course proceed in federal court because the plaintiff has suffered concrete harm to her property. But the second lawsuit may not proceed because that plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts. An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's "compliance with regulatory law" (and, of course, to obtain some money via the statutory damages). Those are not grounds for Article III standing.

*Id*. at 2206. Further, "[e]very class member must have Article III standing in order to recover individual damages" and "must maintain their personal interest in the dispute at all stages of litigation." *Id*. at 2208.

In Count 3 and 3, Plaintiff again alleges a hypothetical minimum wage violation as a result of a repayment provision in the Employment Agreement. Specifically, in Count 3, Plaintiff has alleged that Smoothstack failed to pay wages "free and clear' or "finally and unconditionally" because Smoothstack required "Plaintiff Reed and other similarly situated employees to return their wages to Defendant **if** they left the jobs." Second Am. Compl. ¶ 333. (Emphasis added). Count 4 similarly attempts to cognize the repayment provision as an "illegal kickback of wages." These allegations are based upon Article 5.1 of the Employment Agreement, which states the following:

> **Damages Due to Termination by Employee Prior to Service Commitment Period**. In the event that the Employee resigns or is terminated for Cause prior to Commitment Period as defined in section 3.1.f, the Employee shall pay $23,875 to the Company to reimburse the Company for the Training, Marketing, and On-Boarding Cost. Employee understands and expressly acknowledges that every

12

> project for which the Company is hired is unique. In the event that the Employee breaches this Agreement in any manner the Company will suffer significant and extensive damages, including the cost to train replacements, the cost associated with interruption of work on a project, loss of goodwill, and, potentially, loss of income generating projects. Accordingly, the Employee agrees to pay to the Company $23,875 as liquidated damages, and not as penalty, for each such breach.  (Am. Compl. at Ex. 2)

Sec. Am. Compl, Ex. 2. The Commitment Period, defined in Article 3.1.f, is 4,000 hours. *Id*.

However, it is undisputed that Plaintiff never actually returned any wages, made any payment to Smoothstack, or had any wages deducted upon leaving employment. If Smoothstack never actually "kicked back" any wages of Plaintiff (which is undisputed), then this hypothetical repayment could not have taken Plaintiff's wages below minimum wage. Allegations that present only a hypothetical scenario, which never actually occurred, are insufficient to state a cognizable claim. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 1147, 185 L. Ed. 2d 264 (2013) ("[a]llegations of possible future injury" are not sufficient to confer standing). Further, on June 6, 2024 Smoothstack confirmed that Mr. Reed was released from the service commitment period and any claim for breach of the commitment period was released. Plaintiff has not alleged that (a) he was required to actually pay any amount to Smoothstack, (b) the agreements are active or in-effect, or (c) that Plaintiff suffered any actual or concrete injury as a result of this provision. A "concrete" injury must be "de facto "; that is, it must actually exist. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). There is no actual or concrete injury to Plaintiff, caused by Smoothstack, that can be redressed. Because Plaintiff did not resign and was not terminated for cause, Smoothstack cannot enforce these provisions against Plaintiff. Regardless of the outcome of this action, the Employment Agreement has already been terminated and Smoothstack has stipulated that no repayment is due.

As a result, Plaintiff has not identified any "imminent injury in fact" or "an ongoing injury" that provides standing for its requested injunctive relief. *Garey v. James S. Farrin*, P.C., 35 F.4th 917, 922 (4th Cir. 2022). *See also Esedebe v. Circle 2, Inc*., No. 3:20-CV-8-HEH, 2021 WL 232595, at *2 (E.D. Va. Jan. 22, 2021) ("A plaintiff bears the burden of establishing that she has standing for each type of relief sought."). In sum, Plaintiff has no "personal stake" in the lawsuit to justify the invocation of federal jurisdiction. *See e.g. Thole v. U. S. Bank N.A*, 207 L. Ed. 2d 85, 140 S. Ct. 1615, 1622 (2020)(finding that "the plaintiffs lack Article III standing for a simple, commonsense reason: They have received all of their vested pension benefits so far, and they are legally entitled to receive the same monthly payments for the rest of their lives. Winning or losing this suit would not change the plaintiffs' monthly pension benefits.").

  ii. Counts 3 and 4 Fail to Sufficiently State a Claim.

Claims for "failure to pay wages free and clear" and "illegal kickbacks" must arise in conjunction with a minimum wage violation. Therefore, to state a claim, Plaintiff must plausibly allege that Smoothstack **actually caused** Plaintiff to receive less than minimum wage. *See e.g., Franks v. MKM Oil, Inc*., No. 10 C 13, 2010 WL 3613983, at *4 (N.D. Ill. Sept. 8, 2010) (finding that plaintiff did "not plead any facts that demonstrate her repayment. . . ever caused her to earn less than the minimum wage in a given workweek. Therefore, [plaintiff] fails to state a claim . . . for violation of its FLSA obligations with regards to paying her wages that were "free and clear."). Just like with O'Brien, Plaintiff Reed has not, and cannot, claim that any repayment (which never occurred) caused him to earn less than minimum wage. Similarly, Plaintiff has failed to plead (a) what wages it contends were "kicked back" or (b) how any (hypothetical) repayment acted to reduce Plaintiff's compensation below minimum wage. Because Plaintiff

never repaid any sum to Smoothstack, he cannot maintain a claim premised entirely on the theory that a "kickback **could have** caused him to earn less than minimum wage.

**E.** **Plaintiff Has Failed to Establish Standing or State a Claim for Counts 5 and 6.**

Count 5 of the Second Amended Complaint asserts a declaratory judgment action requesting a declaration that the repayment provision in the employment agreement is unconscionable. Similarly, Count 6 makes the same request that the provision be deemed unenforceable.

   i.   Plaintiffs' Lack Standing to Assert Count 5 and 6.

"In cases of actual controversy, circuit courts within the scope of their respective jurisdictions shall have power to make binding adjudications of right." Va. Code § 8.01-184. "[A]n actual controversy is a prerequisite to a court having authority." *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cty. Bd. of Supervisors*, 285 Va. 87, 98, 737 S.E.2d 1, 6 (2013). "If there is no actual controversy between the parties regarding the adjudication of rights, the declaratory judgment is an advisory opinion that the court does not have jurisdiction to render." *Id.* "Additionally, a plaintiff must establish a "justiciable interest" by alleging facts 'demonstrat[ing] an actual controversy between the plaintiff and the defendant, such that [the plaintiff's] rights will be affected by the outcome of the case.'" *Id.* (citing *S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 383, 478 S.E.2d 295, 299 (1996)).

Here, regardless of the Court's ruling on these claims, neither Justin O'Brien nor Skylar Reed will be impacted at all. Neither individual is currently employed by Smoothstack and both individuals have been released from their employment agreements. As a result, neither has a justiciable interest in either claim.

   ii.   Plaintiffs Cannot Recover Attorneys' Fees as to Count 5 or 6.

In both Count 5 and 6, Plaintiffs request the recovery of attorneys' fees, but have not alleged any basis for the recovery of such fees. "The purpose of a declaratory judgment proceeding is the adjudication of rights" between the parties as to "an actual controversy." *Bd. of Supervisors of James Cty. v. Windmill Meadows, LLC*, 287 Va. 170, 184, 752 S.E.2d 837, 845 (2014) (citing *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle County Bd. of Supervisors*, 285 Va. 87, 98, 737 S.E.2d 1, 6 (2013). The plain language of the Declaratory Judgment Act, Code § 8.01-184 et seq., "does not authorize a court to make an award of attorney's fees" to a prevailing party. *Id.* Thus, the claim for attorneys' fees should be dismissed.

F. **Counts 4-6 are Barred by Judicial Estoppel**.

The parties previously filed a joint stipulation agreeing that the claims for "illegal kickbacks", "unconscionable contract", and "unenforceable contract" would be withdrawn. [ECF 18]. Specifically, the stipulation stated, "Based on the aforementioned stipulation, the parties agree that Plaintiff will file an Amended Complaint on behalf of himself <u>and others similarly situated</u> withdrawing Counts III, V, and VI." (Emphasis added). These claims have now been reasserted as Counts 4, 5, and 6 in the Second Amended Complaint.

Courts have observed that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815 (2001). The Court went on to describe relevant factors in applying this doctrine, including:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to

16

> judicial integrity. A third consideration is whether the party
> seeking to assert an inconsistent position would derive an unfair
> advantage or impose an unfair detriment on the opposing party if
> not estopped. In enumerating these factors, we do not establish
> inflexible prerequisites or an exhaustive formula for determining
> the applicability of judicial estoppel. Additional considerations
> may inform the doctrine's application in specific factual contexts.

*Id*. at 750-51. Here, Plaintiff's prior stipulation withdrawing these claims is inconsistent with the

current position in the Second Amended Complaint, wherein the claims have been reasserted.

Second, the Court accepted the filed stipulation by the parties, and at least initially, these claims

were in fact withdrawn. Following their withdrawal, the Court conditionally certified Count 1

(FLSA – failure to pay minimum wage) and Count 2 (FLSA – failure to pay overtime) of

Plaintiff's Amended Complaint and notice was issued.  If Plaintiff were permitted to reinsert

these claims, it would operate as a backdoor to conditional certification. Effectively, Plaintiff

would be able to obtain conditional certification on two limited claims and then, after notice was

issued, significantly expand those claims and the scope of the collective outside of the scrutiny of

the Court's initial "similarly situated" analysis.  The "illegal kickback" and "free and clear"

claims are highly individualized and standing would have to be independently examined for each

person. For example, whether these individuals completed the commitment period, resigned,

were terminated for cause, or not for cause, whether attempts to collect were made, whether any

repayment was made, and whether wages were ever withheld, whether they actually suffered an

injury, etc., all involve separate inquiries and evidence. There is no formulaic policy or practice

as it relates to "enforcing" the Employment Agreements or whether standing exists.  Because

individual determinations will predominate, conditional certification on these claims would have

been inappropriate. However, by resurrecting these claims, Plaintiff would be permitted to

proceed forward under conditional certification nonetheless. Thus, Plaintiff would derive an unfair advantage.

WHEREFORE, Defendant, by counsel, requests that this Court grant Defendant's Motion to Dismiss, dismiss the Second Amended Complaint, and for all other relief this Court deems just and proper.

Respectfully Submitted,

By Counsel

_/s/   Zach Miller___
Zach Miller, Esq. (VSB No. 85860)
Dirk McClanahan, Esq. (VSB No. 81208)
McClanahan Powers, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Tel: (703) 520-1326
Fax: (703) 828-0205
Email: zmiller@mcplegal.com
          dmcclanahan@mcplegal.com
*Counsel for Smoothstack, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2024, the foregoing *document* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Zach Miller__