**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

JUSTIN O'BRIEN and SKYLAR REED, on behalf
of themselves and all others similarly situated,

Plaintiffs,

v.

SMOOTHSTACK, INC.,

Defendant.

**Civil Action No. 1:23-cv-00491-RDA-LRV**

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES'**
**JOINT MOTION FOR SETTLEMENT APPROVAL**

# TABLE OF CONTENTS

I.    Introduction ............................................................................................................1

II.   Factual and Procedural History ............................................................................1

III.  Summary of Settlement Terms ..............................................................................4

      A.    The Settlement Fund ....................................................................................4

      B.    Eligible Participants ....................................................................................4

      C.    Settlement Awards ......................................................................................5

      D.    Plaintiff O'Brien's Individual Settlement Payment ....................................5

      E.    Tax Treatment .............................................................................................5

      F.    Release ........................................................................................................6

      G.    Service Awards ...........................................................................................7

      H.    Attorneys' Fees and Costs ..........................................................................8

      I.     Settlement Administration ...........................................................................8

IV.   Argument ...............................................................................................................8

      A.    Approval of FLSA Settlements....................................................................8

      B.    The Settlement is Fair and Reasonable and Should Be Approved. ...........9

            1.    The Settlement Provides Meaningful Recovery for Collective Members...9

            2.    Plaintiffs Faced Significant Risks in the Absence of Settlement. ............11

            3.    The State of the Proceedings, Including the Complexity, Expense, and Likely Duration of Litigation. .................................... 13

            4.    Counsel's Experience and Views Support Approval................................13

      C.    Services Awards Are Warranted................................................................ 14

      D.    Plaintiffs' Counsel's Attorneys' Fees and Costs Are Reasonable. ....................... 16

            1.    Criteria For Determining Reasonableness of Attorneys' Fees. ................16

            2.    The Fees are Reasonable Based on an Analysis of the *Johnson* Factors...17

                  a.    Plaintiffs' Counsel Expended Significant Time and Labor on This Case (*Johnson* Factor 1) ............................................. 17

                  b.    The Complexity of Issues and Required Skill of Highly Talented Attorneys Warrant the Requested Fee (*Johnson* Factors 2, 3, and 9)....... 18

                  c.    Plaintiffs' Counsel Assumed Considerable Risk to Pursue This Action on a Contingency Basis (*Johnson* Factors 6 and 10) .................... 19

d.    The Requested Fee Comported with the Customary Fee for Similar Work (*Johnson* Factors 5 and 12).................................... 20

e.    Plaintiffs' Counsel's Efforts Achieved a Successful Result (*Johnson* Factor 8) ....................................... 21

f.    The Remaining *Johnson* Factors Support the Fee Request (*Johnson* Factors 4, 7, and 11) ................................ 23

3.    Plaintiffs' Counsel's Expenses Are Reasonable........................................23

V.    Conclusion .....................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Baust v. City of Virginia Beach*,
  574 F. Supp. 3d 358 (E.D. Va. 2021) .................................................................. 10, 21

*Carroll v. Northampton Restaurants, Inc.*,
  No. 21 Civ. 115, 2024 U.S. Dist. LEXIS 51220 (E.D. Va. Mar. 21, 2024) ........................ 21

*Castel v. Advantis Real Estate Services Company*,
  No. 07 Civ. 435, 2008 U.S. Dist. LEXIS 61318 (E.D. Va. Aug. 8, 2008) ........................... 22

*Cho v. Joong Ang Daily News Washington, Inc.*,
  No. 18 Civ. 1062, 2020 U.S. Dist. LEXIS 38055 (E.D. Va. Mar. 4, 2020) ...................... 20, 21

*Compton v. N. Cent. Va. Rests., Inc.*,
  No. 20 Civ. 73, 2022 U.S. Dist. LEXIS 159070 (W.D. Va. Sept. 2, 2022) ........................... 15

*Curtis v. Genesis Eng'g Sols., Inc.*,
  No. 21 Civ. 722, 2022 U.S. Dist. LEXIS 65582 (D. Md. Apr. 8, 2022) .............................. 15

*Diaz v. RM Constr. LLC*,
  No. 21 Civ. 1192, 2022 U.S. Dist. LEXIS 134605 (E.D. Va. June 17, 2022) ....................... 20

*Dunbar v. 4399 Bronx Chicken LLC*,
  No. 20 Civ. 7884, 2021 U.S. Dist. LEXIS 108175 (S.D.N.Y. June 9, 2021) ........................ 11

*Duprey v. Scotts Co. LLC*,
  30 F. Supp. 3d 404 (D. Md. 2014) ...................................................................... 9

*Edelen v. Am. Residential Servs., LLC*,
  No. 11 Civ. 2744, 2013 U.S. Dist. LEXIS 102373 (D. Md. July 22, 2013) ......................... 10

*Epps v. Scoffolding Sols.*,
  No. 17 Civ. 00562, 2019 U.S. Dist. LEXIS 217413 (E.D. Va. Dec. 11, 2019) ..................... 16

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................................... 14

*Galloway v. Williams*,
  No. 19 Civ. 470, 2020 U.S. Dist. LEXIS 238950 (E.D. Va. Dec. 17, 2020) ................... 14, 15

*Garcia v. Decalo Med. Grp., LLC*,
  No. 14 Civ. 301, 2015 U.S. Dist. LEXIS 171128 (D. Md. Dec. 23, 2015) .......................... 10

*Gholston v. Smithfield Foods Inc.*,
  No. 21 Civ. 194, 2022 U.S. Dist. LEXIS 247816 (E.D. Va. Nov. 2, 2022) ............................ 21

*Gomez v. Seoul Gool Dae Gee Inc.*,
  434 F. Supp. 3d 381 (E.D. Va. 2020) ...................................................................... 20

*Gue v. Shree Pashuapati Corp.*,
  No. 21 Civ. 44, 2021 U.S. Dist. LEXIS 110977 (D. Md. Jun. 14, 2021) ................................ 10

*Hargrove v. Ryla Teleservs., Inc.*,
  No. 11 Civ. 344, 2013 U.S. Dist. LEXIS 63902 (E.D. Va. April 12, 2013) ............................ 21

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................... 21

*Hoffman v. Bear Chase Brewing Co., LLC*,
  No. 21 Civ. 1443, 2024 U.S. Dist. LEXIS 62632 (E.D. Va. Mar. 19, 2024) ........................... 21

*JK Moving & Storage Inc. v. Winmar Construction, Inc.*,
  No. 17 Civ. 1213, 2018 U.S. Dist. LEXIS 241866 (E.D. Va. June 20, 2018) .......................... 20

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ...................................................................... 17, 23

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
  352 F. Supp. 3d 499 (M.D.N.C. 2018) ............................................................... 14, 15

*Kuntze v. Josh Enters. Inc.*,
  No. 18 Civ. 38, 2019 U.S. Dist. LEXIS 84849 (E.D. Va. May 20, 2019) ................................ 10

*LaFleur v. Dollar Tree Stores, Inc.*,
  189 F. Supp. 3d 588 (E.D. Va. 2016) ................................................................... 8

*Lee v. Ex-Exec Lube, LLC*,
  No. 19 Civ. 3195, 2021 U.S. Dist. LEXIS 55111 (D. Md. Mar. 24, 2021) ............................... 10

*Lomascolo v. Parsons Binckerhoff. Inc.*,
  No. 08 Civ. 1310, 2009 U.S. Dist. LEXIS 89136 (E.D. Va. June 23, 2009) .............................. 9

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ....................................................................... 9

*Mercer v. Duke Univ.*,
  401 F.3d 199 (4th Cir. 2005) ........................................................................ 16

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ................................................................................ 24

*Poulin v. Gen. Dynamics Shared Res., Inc.*,
    No. 09 Civ. 58, 2010 U.S. Dist. LEXIS 47511 (W.D. Va. May 5, 2010) .............................. 16

*Rodkey v. Griffin*,
    No. 20 Civ. 0329, 2020 U.S. Dist. LEXIS 253996 (E.D. Va. Nov. 30, 2020) ........................ 20

*Rosales v. Rock Spring Contr. LLC*,
    No. 23 Civ. 407, 2024 U.S. Dist. LEXIS 60970 (E.D. Va. Apr. 2, 2024) ........................ 14, 15

*Schmidt v. FCI Enterprises LLC*,
    No. 18 Civ. 1472, 2020 U.S. Dist. LEXIS 97585 (E.D. Va. Jan. 3, 2020),
    *rev'd on other grounds*, 3 F.4th 95 (4th Cir. 2021) ................................................. 20

*Sheick v. Automotive Component Carrier LLC*,
    No. 09 Civ. 14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010) .................. 11

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 25, 2007) .......................... 15

**STATUTES**

29 U.S.C. § 201 .............................................................................................. 1

29 U.S.C. § 216 ......................................................................................... 16, 23

## I.    Introduction

Plaintiffs Justin O'Brien and Skylar Reed ("Named Plaintiffs"), and Defendant Smoothstack, Inc. ("Smoothstack") (together with Plaintiffs, the "Parties"), have agreed to, subject to Court approval, resolve this collective action pursuant to the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for Three Hundred Twenty-Five Thousand Dollars ($325,000), inclusive of  Plaintiff O'Brien's individual FLSA retaliation claim, and Plaintiffs' counsel request for an award of statutory attorneys' fees and costs, as outlined below (the "Settlement").[1]  The Settlement satisfies all of the criteria for approval of an FLSA collective action because it resolves a bona fide dispute; was the result of arm's-length negotiations conducted by counsel well versed in wage-and-hour law; and it is fair, reasonable, and adequate. Moreover, Plaintiffs' counsel's requested fee is reasonable under the relevant factors.

Accordingly, the Parties respectfully move for an Order: (1) approving the Settlement as reasonable, fair, and adequate; (2) authorizing the distribution of payments in accordance with the terms of the Settlement; (3) approving a Service Award of $5,000 for each of the two Named Plaintiffs and $500 for each Notice Declarant; (4) approving $189,000 in Attorneys' Fees and Costs; (5) dismissing the case with prejudice; and (6) retaining jurisdiction to enforce the Settlement.

## II.    Factual and Procedural History

Smoothstack is a staffing agency based in McLean, Virginia that provides aspiring information technology (IT) workers ("Recruits" and "Consultants") with approximately 14-15

---

[1]    The Settlement Agreement and Release ("Settlement Agreement") is attached as Exhibit 1 to the Declaration of Molly Elkin in Support of Plaintiffs' Motion for Settlement Approval ("Elkin Decl.").  All capitalized words have their same meaning as defined in the Settlement Agreement. All exhibits are attached to the Elkin Decl. unless otherwise indicated.

weeks of intensive training (the "Training Program") followed by work assignments with one of Smoothstack's clients. Plaintiff O'Brien commenced this action on behalf of himself and others similarly situated, alleging unpaid minimum wages for work performed during the first few weeks of the Training Program (the "Application Phase"); and alleging unpaid overtime for hours worked over 40 during the remainder of the Training Program (the "Training Phase"), pursuant to the FLSA. Dkt. 19 ¶¶ 8-11, 63-67, 101-03. Plaintiff O'Brien further alleged an individual claim for unlawful retaliation pursuant to the FLSA. *Id.* ¶¶ 225-31.

Plaintiff filed his initial complaint on April 13, 2023, on behalf of himself and all other similarly situated workers. Dkt. 1. On May 12, 2023, Defendant filed its first Motion to Dismiss. Dkt. No. 13. On May 23, 2023, the Parties jointly stipulated to dismiss Counts 3, 5, and 6 of the initial complaint, Dkt. 18, and on May 25, 2023, Plaintiff filed his Amended Complaint. Dkt. No. 19. On June 6, 2023, Defendant filed its second Motion to Dismiss with respect to Count 4 of Plaintiff's Amended Complaint. Dkt. Nos. 21, 22. On July 31, 2023, Plaintiff moved for conditional certification of an FLSA collective pursuant to 29 U.S.C. § 216(b). Dkt. No. 32. On March 28, 2024, the Court granted-in-part Plaintiff's motion and authorized Plaintiff to send notice to the putative collective, and granted Defendant's Motion to Dismiss with respect to Count III. Dkt. No. 44. During the notice period, 95 individuals submitted consent forms to join this lawsuit, in addition to five (5) individuals, including the two Named Plaintiffs, who previously filed consent forms. Dkt. Nos. 1, 31, 41, 47.

On July 16, 2024, Plaintiffs filed their Second Amended Complaint, Dkt. No. 79, adding Skylar Reed as a Named Plaintiff and alleging additional claims pursuant to the FLSA and Virginia state law, including that Smoothstack failed to pay one-and-one-half times the regular rate for overtime hours worked once a Recruit was placed on assignment with a Smoothstack

client (the "Assignment Phase"). Dkt. 79 ¶¶ 376-88. In addition, Plaintiffs brought various claims challenging the training repayment provisions in Smoothstack's employment agreements. *Id.* ¶¶ 351-68; 389-422.

On August 29, 2024, Smoothstack moved to dismiss the Second Amended Complaint. Dkt. Nos. 88, 89. On July 10, 2024, the Department of Labor filed a separate lawsuit against Smoothstack, which was transferred to this Court on December 18, 2025. *Micone v. Smoothstack, Inc. (DOL Lawsuit)*, 1:24-cv-2295, Dkt. 17. Smoothstack filed a motion to dismiss in the DOL case on January 17, 2025. DOL Lawsuit at Dkts. 31, 32. The Court held a hearing on May 14, 2025, to consider the pending motions to dismiss. Dkts. 99, 104. At the hearing, the DOL and Smoothstack informed the Court that they reached a settlement to resolve DOL's public enforcement action. During that hearing, the Court ordered the Parties in this case to attend mediation, facilitated by Magistrate Judge Lindsay R. Vaala, to explore potential settlement. Dkt. No. 104. On June 9, 2025, the Parties attended an in-person mediation. The Parties did not reach a settlement at that time.

On July 11, 2025, the Court granted-in-part and denied-in-part Smoothstack's Motion to Dismiss Plaintiffs' Second Amended Complaint, dismissed eight (8) counts in the Second Amended Complaint, and directed the Parties to confer regarding the possibility of prompt settlement. Dkt. No. 112. Pursuant to that Order, the Parties met and conferred regarding settlement of the remaining claims (Counts 1, 2, 3, 8, and 9) and on July 29, 2025, notified the Court that they reached a settlement in principle and requested a stay of the proceedings pending submission of the approval papers, Dkt. No. 115, which the Court granted on July 30, 2025, Dkt. No. 118. Thereafter, the Parties engaged in good faith settlement discussions, ultimately executing a signed Settlement Agreement on September 28, 2025.

III.    **Summary of Settlement Terms**

A.    **The Settlement Fund**

The Settlement Agreement establishes a settlement fund of $325,000 to resolve all surviving claims against Defendant (the "Total Settlement Amount"). Ex. 1 (Settlement Agreement) § 1.35. The Total Settlement Amount represents the amount Defendant has agreed to pay to resolve and settle these wage-and-hour claims. The Total Settlement Amount includes: Attorneys' Fees and Costs; the relevant wage and hour claims of Collective Members; Service Awards; all penalties, liquidated damages, and interest; O'Brien's Individual Settlement Payment, and costs of settlement administration. *Id.* Smoothstack will pay the Employer Payroll Taxes in addition to the Total Settlement Amount. *Id.*

The Net Fund is the remainder of the Total Settlement Amount after deductions for Service Awards, Attorneys' Fees and Costs, O'Brien's Individual Settlement Payment, and costs of settlement administration. *Id.* § 1.19. If the Settlement is approved by the Court, the total amount of the Net Fund is $100,000.00. *Id.* The Net Fund will be allocated to the specific time periods during which Collective Members participated in: the Application Phase; the Training Phase; and the Assignment Phase, roughly in proportion to the magnitude and strength of the claims of Collective Members during each phase. *Id.* § 5.5. Specifically, $39,000 will be allocated for the Application Phase; $55,000 will be allocated for the Training Phase; and $6,000 will be allocated for the Assignment Phase. *Id.* § 5.5(a)(1)-(3).

B.    **Eligible Participants**

Collective Members are the 100 individuals who submitted consent forms and opted into this litigation (*O'Brien et al v. Smoothstack*, No. 1:23-cv-00491-RDA-LRV).

### C.    Settlement Awards

Each Collective Member who participated during any of the three relevant periods (Application Phase; Training Phase; and Assignment Phase) will receive an equal share of the Net Fund allocated to that time period. *Id.* § 5.5(b). If a Collective Member performed work in more than one relevant time period, they shall receive a share for each relevant portion of the Net Fund, as determined by the Settlement Administrator based on Smoothstack's records, as supplemented by any input from Collective Members, Plaintiffs' counsel, and Smoothstack. *Id*. In addition, the Parties separately negotiated an individual settlement for Plaintiff O'Brien, described in § I.D below.

All 100 Collective Members have been notified of the allocation of the Total Settlement Amount and the approximate amount of their own Settlement Awards under the allocation, were given an opportunity to dispute the allocation and not one Collective Member objected or disputed his/her Settlement Award. Elkin Decl. ¶ 51.

### D.    Plaintiff O'Brien's Individual Settlement Payment

The Parties separately negotiated a settlement of Plaintiff O'Brien's individual FLSA retaliation claim (Count 8), with Plaintiff providing a general release , described in § I.F below, in exchange for a separate individual award of $20,000. *Id.* § 5.6. This Individual Settlement Payment will be paid from the Total Settlement Amount. *Id.*

### E.    Tax Treatment

Payments from the Application Phase portion of the Net Fund shall be treated as 100% non-wage compensation (Form 1099-Misc) and made without withholdings. *Id.* § 5.7(a), (b). Payments from the Training Phase and/or Assignment Phase portion of the Net Fund shall be treated as 50% wage compensation (Form W-2) and 50% non-wage compensation. *Id.* The

Settlement Administrator shall determine tax withholding for all payment amounts treated as wage compensation.  *Id.*  The Service Awards shall be made without withholdings and shall be reported as Form-1099-Misc.  *Id.* § 5.7(e).  Plaintiff O'Brien's Individual Settlement Payment shall be treated as non-wage compensation.  *Id.* § 5.7(f).

### F.      Release

Participating Collective Members will release Smoothstack, upon the cashing of the Settlement Check, from the Released Claims as defined in Section 1.28 of the Settlement Agreement, which means "the wage and hour claims pled in the Complaint or that could have been pled based on the facts alleged in the Complaint, and that accrued during FLSA Collective Members' employment at Smoothstack during the Release Period, including, without limitations, claims for unpaid minimum and overtime wages, failure to pay wages free and clear and/or wages kicked back, failure to pay wages at the proper overtime rate, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, excluding the Excluded Claims."  Ex. 1 (Settlement Agreement) § 1.28.  The Excluded Claims means "any and all claims related to the liquidated damages training provision in Smoothstack's employment agreement(s), including but not limited to federal and/or state claims for failure to pay wages free-and-clear and/or wages kicked back, on behalf of any Collective Member who was alleged to have kicked-back amounts pursuant to the liquidated damages training provision in their employment agreement(s)."  *Id.* § 1.16.  If the Court approves the Service Awards, the Named Plaintiffs will additionally release all demands, claims and actions, whether known or unknown, relating to their employment or the termination of their employment with Defendant, as defined in Section 6.3 of the Settlement Agreement.  In addition, by receiving his Individual Settlement Amount, Plaintiff O'Brien shall also release his individual FLSA retaliation claim.  *Id.* § 6.3.

In addition, conditioned upon the Court's entry of the Approval Order, Smoothstack will

waive, release, and discharge Collective Members from all demands, claims and actions, related

to their employment or termination of their employment with Defendant, including but not

limited to claim(s) for breach of their employment agreement(s) related to the liquidated

damages provision and/or service commitment requirement contained therein. *Id.* § 6.2. For

avoidance of doubt, this release means that Smoothstack will forever release all claims as to all

Collective Members, including Named Plaintiffs, regarding the liquidated damages training

provision, including a service commitment requirement, and Smoothstack will not attempt to

enforce the liquidated damages provision contained in such agreement(s), including for breach of

the agreement(s). *Id.* Smoothstack agrees to additionally waive, release, and discharge Named

Plaintiffs from any and all demands, claims and actions, whether known or unknown, relating to

their employment with Defendant. *Id.*

### G. Service Awards

The Settlement Agreement provides that, subject to Court approval, the two Named

Plaintiffs will each receive a Service Award of up to Five Thousand Dollars ($5,000.00) in

recognition of assistance rendered in obtaining the benefits of the settlement for Collective

Members as well as the time that they took to do so. *Id.* § 5.4. Named Plaintiffs assisted counsel

in the investigation of the claims, helped review the draft complaints; and reviewed, approved,

and signed the settlement agreement; in addition, Plaintiff O'Brien submitted a detailed

declaration in advance of Plaintiffs' Motion For Notice Pursuant to § 216(b) and participated in

discovery, including written discovery and producing documents. Defendant does not oppose

this payment. *Id.* § 5.4(a). The Settlement Agreement further provides that, subject to Court

approval, the Notice Declarants – who submitted detailed declarations in support of Plaintiffs'

Motion for Notice Pursuant to § 216(b) – will each receive a Service Award of up to Five

Hundred Dollars ($500) in recognition of assistance rendered to the Collective. *Id.* § 5.4(b). All

100 Collective Members were notified of the Service Awards and none objected. Elkin Decl. ¶

52.

### H.    Attorneys' Fees and Costs

Under the Settlement Agreement, and as set forth herein, Plaintiffs' counsel request Court

approval of an award of $189,000.00 as statutory attorneys' fees, inclusive of reasonable

litigation costs. Ex. 1 (Settlement Agreement) §§ 1.6, 5.3. Defendant does not oppose this

request. *Id.* § 5.3(a). All 100 Collective Members were notified of the requested fee award and

none objected.

### I.    Settlement Administration

The Parties have selected ILYM Group, Inc. to serve as settlement administrator,

following a competitive bid application process. *Id.* § 3.1. The costs of settlement

administration shall be paid from the Total Settlement Amount of up to $5,000. Ex. 1

(Settlement Agreement) § 3.3. All 100 Collective Members were notified of this cost and none

objected. Elkin Decl. ¶ 53.

## IV.    Argument

### A.    Approval of FLSA Settlements

Courts approve FLSA settlements that are "fair, adequate, and reasonable." *LaFleur v.

Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 594 (E.D. Va. 2016). There is a "strong

presumption in favor of finding a settlement fair that must be kept in mind in considering the

various factors to be reviewed." *Id.* (internal quotation marks omitted). These factors are: (1)

the extent of discovery that has taken place; (2) the stage of the proceedings, including the

complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in

the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the

probability of Plaintiffs' success on the merits; and (6) the amount of the settlement in relation to

the potential recovery. *Id.* (quoting *Lomascolo v. Parsons Binckerhoff. Inc.*, No. 08 Civ. 1310,

2009 U.S. Dist. LEXIS 89136, at *29 (E.D. Va. June 23, 2009)).  The Court's role is not,

however, to "make a proponent of a proposed settlement justify each term of a settlement

agreement" or "substitute its own judgment for that of counsel."  *Lomascolo*, 2009 U.S. Dist.

LEXIS 89136, at *28.  As long as an FLSA settlement is a "fair and reasonable resolution of a

bona fide dispute," it merits approval.  *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407–08

(D. Md. 2014); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th

Cir. 1982).

### B.    The Settlement is Fair and Reasonable and Should Be Approved.

As set forth below, under the factors outlined above, the Settlement terms are fair and

reasonable and should be approved.  The Settlement represents a good faith compromise of the

Parties' bona fide dispute regarding Defendant's minimum wage and overtime pay policies under

the FLSA.  This compromise was reached after arm's-length negotiations between the Parties.

### 1.    The Settlement Provides Meaningful Recovery for Collective Members.

The Settlement represents a significant percentage of the recovery that Collective

Members might have achieved had they prevailed on all their claims and survived on appeal.

The Total Settlement Amount represents approximately 34% of Collective Members' alleged

unpaid minimum wages during the Application Phase (calculated based on 40 hours of work per

week and  including an award of liquidated damages); 57% of Collective Members' alleged

unpaid overtime wages during the Training Phase (calculated using 5 hours of overtime during

each week over 16 weeks of training and including an award of liquidated damages); and 22% of

Collective Members' regular-rate claims (calculated using recorded overtime and including an

award of liquidated damages).  Elkin Decl. ¶ 54.  As to Plaintiff O'Brien's individual retaliation

settlement, his payment represents approximately 26% of his estimated maximum recovery,

including backpay and liquidated damages for the four weeks in which he was placed on bench

status and earned minimum wage, plus approximately 6 months of full-time wages at his regular

rate, as well as approximately $10,000 in compensatory damages.  *Id.* ¶ 55.

These recoveries are well within the range of settlements commonly approved in this

Circuit.  *See, e.g.*, *Gue v. Shree Pashuapati Corp.*, No. 21 Civ. 44, 2021 U.S. Dist. LEXIS

110977, at *6 (D. Md. Jun. 14, 2021) (approving settlement where plaintiffs recovered 20% of

backpay based on allegations in the complaint); *Lee v. Ex-Exec Lube, LLC*, No. 19 Civ. 3195,

2021 U.S. Dist. LEXIS 55111, at *6 (D. Md. Mar. 24, 2021) (approving settlement where

plaintiff received 14% of backpay based on allegations in the complaint); *Kuntze v. Josh Enters.*

*Inc.*, No. 18 Civ. 38, 2019 U.S. Dist. LEXIS 84849, at *8-9 (E.D. Va. May 20, 2019) (approving

settlement where plaintiff received just above 50% of maximum recovery, recognizing "there is

also a possibility that Plaintiff is entitled to a lesser amount of damages or no damages at all.

Thus, the probability of full recovery is not so great as to outweigh the benefits of settlement in

this case."); *Edelen v. Am. Residential Servs., LLC*, No. 11 Civ. 2744, 2013 U.S. Dist. LEXIS

102373, at *29-31 (D. Md. July 22, 2013) (approving a settlement where 32% of the maximum

damages were recovered); *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 366 (E.D. Va.

2021) (approving settlement where the settlement agreement was about 25% of the maximum

potential recovery); *Garcia v. Decalo Med. Grp., LLC*, No. 14 Civ 301, 2015 U.S. Dist. LEXIS

171128, at *20 (D. Md. Dec. 23, 2015) (approving settlement where plaintiffs recovered 61% of

maximum recovery). *See also Dunbar v. 4399 Bronx Chicken LLC*, 20 Civ. 7884, 2021 U.S.

Dist. LEXIS 108175, at *3-4 (S.D.N.Y. June 9, 2021) (approving settlement where plaintiff

received 31% of maximum possible recovery on FLSA retaliation claim).

After all fees, expenses, settlement administration costs and Service Awards are paid, the

estimated award for Collective Members who participated or performed work during only the

Application Phase is $390, Elkin Decl. ¶ 56; the estimated award for Collective Members who

participated or performed work during the Application Phase and the Training Phase is $1,390,

*id.*; and the estimated award for Collective Members who participated during the Application

Phase, the Training Phase, and the Assignment Phase is $1,630, *id.* These amounts were based

on Plaintiffs' counsel's evaluation of the strength of the claims and defenses during the

respective time periods. *Id.* ¶ 57.

On August 11, 2025, Plaintiffs' counsel advised each Collective Member of their

estimated settlement award and invited Collective Member to raise any concerns; no Collective

Member raised any concerns with their estimated award amounts. *Id.* ¶ 51. In addition to

monetary relief, Smoothstack agreed not to enforce the liquidated damages provision in

Collective Members' employment contracts, providing significant relief as they will not now, or

in the future, be at risk of repaying upwards of $30,000 for training costs. Ex. 1 (Settlement

Agreement) §§ 1.28, 1.16, 6.2.

**2.     Plaintiffs Faced Significant Risks in the Absence of Settlement.**

While both Plaintiffs and Defendant believe that their legal positions are strong,

"[w]hatever the relative merits of the parties' legal positions, there is no risk-free, expense-free

litigation." *Sheick v. Automotive Component Carrier LLC*, No. 09. Civ. 14429, 2010 U.S. Dist.

LEXIS 110411, at *50 (E.D. Mich. Oct. 18, 2010). This case involves several contested

questions of law and fact that could significantly impact liability and damages, leaving Plaintiffs with a significantly reduced recovery or no recovery at all.  For example, without contemporaneous time records for all hours worked during the Training Phase, proving the extent of minimum wage and overtime hours worked would be an evidentiary challenge.  To establish a third-year of liability and liquidated damages under the FLSA, Plaintiffs further faced risk to overcome Smoothstack's various state-of-mind defenses — that any violations were not willful, knowing, or intentional, and compliance was attempted in good faith.

On liability, Plaintiffs faced risk in establishing that Collective Members were "employees" under the FLSA during the Application Phase, which, if Smoothstack prevailed, would mean that nearly half of the collective (or 45 individuals) stand to recovery nothing. Additionally, Smoothstack would likely argue that during the Assignment Phase, Consultants were overtime-exempt (as computer-professional employees), and therefore, not entitled to any overtime, which would defeat Plaintiffs' regular-rate claim.  While Plaintiffs believe that Consultants do not qualify for any relevant exemption, the exemption inquiry is highly contextual, and litigation of exemption defenses inherently poses significant risks.  There is also significant risk that Plaintiffs could continue to maintain a collective through trial, as Smoothstack would likely move to decertify the collective.  And while Plaintiffs disagree, they recognize that maintaining collective certification is always a risk.  Moreover, with respect to Plaintiff O'Brien's individual claim, Smoothstack would likely argue that he was placed on bench status because his project with Accenture had ended and they were unable to find a replacement assignment for him.  While Plaintiffs disagree, they recognize that this argument posed a litigation risk.

At all times, Defendant consistently maintained that its pay practices complied with the FLSA and other applicable laws, that Collective Members were properly compensated for the work they performed, and that Smoothstack acted in good faith in structuring its training and employment programs. Smoothstack has also consistently denied that it retaliated against Plaintiff O'Brien or that its training repayment provisions were unlawful. These defenses, if accepted, could have precluded or substantially reduced recovery for Plaintiffs.

### 3. The State of the Proceedings, Including the Complexity, Expense, and Likely Duration of Litigation.

At this stage, the parties completed two rounds of motion-to-dismiss briefing, which narrowed the claims at issue in the litigation, and Plaintiffs successfully moved for conditional certification pursuant to 29 U.S.C. § 216(b), with approximately 100 individuals joining the lawsuit as Plaintiffs. As it stands, the Parties have engaged in significant written discovery, including Plaintiffs serving 54 requests for production of documents and 9 interrogatories. Smoothstack further served discovery on four (4) plaintiffs, including a total of 120 requests for production of documents and 51 interrogatories. Elkin Decl. ¶ 50. However, the Parties reached a settlement at a key inflection point before engaging further in expensive and time-consuming discovery to prove Plaintiffs' claims, including negotiating the scope of opt-in discovery, serving further written discovery, depositions of corporate and fact witnesses, briefing motions for summary judgment, and a trial. Absent settlement, the Court or a jury would have to decide issues of both liability and damages.

### 4. Counsel's Experience and Views Support Approval.

Plaintiffs' counsel are locally and nationally recognized leaders in the field of wage-and-hour and consumer-protection law, including decades of experience litigating, trying, and settling FLSA cases between them. Elkin Decl. ¶¶ 2-3, 14-49. This experience is clear in the nature of

Plaintiffs' claims, which require sophisticated knowledge of the relevant FLSA statutes, regulations, and case law to recognize, investigate, plead, and shepherd through litigation. Notably, Plaintiffs were seemingly able to adeptly navigate Defendant's opposition to Plaintiffs' motion for collective action certification and defeated, in part, Defendant's motion to dismiss Plaintiffs' Second Amended Complaint. This experience has allowed Plaintiffs' counsel to secure a significant and meaningful settlement in the face of uncertainty.

### C.    Services Awards Are Warranted.

In addition to their Settlement Amounts as Collective Members, Named Plaintiffs request a $5,000 Service Award each and $500 Service Award for Notice Declarants[2] in recognition of their participation and assistance in the identification, investigation, and prosecution of this lawsuit. Such service awards are standard in FLSA collective action settlements and are designed to reward lead plaintiffs and individuals that submit declarations for the time, effort, and inconvenience of consulting with counsel over the time that a case is active. *See, e.g.*, *Rosales v. Rock Spring Contr. LLC*, No. 23 Civ. 407, 2024 U.S. Dist. LEXIS 60970, at *19 (E.D. Va. Apr. 2, 2024) ("t]rial courts often authorize service awards to class representatives for the time and effort they expended for the benefit of the class" (quoting *Galloway v. Williams*, No. 19 Civ. 470, 2020 U.S. Dist. LEXIS 238950, at *20-21 (E.D. Va. Dec. 17, 2020)); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 507-08 (M.D.N.C. 2018) (awarding service award to named plaintiff who provided evidence in support of conditional certification, assisted counsel in discovery, responded to written discovery, served as the contact person for collective members, and educated counsel on defendant's policies and documents); *Frank v.*

---

[2]    The Notice Declarants are Ogah "Jackreece" Egini and Long Nguen, who submitted declarations in support of Plaintiffs' motion for conditional certification, Dkt. Nos. 32, 33. *See* Ex. 1 (Settlement Agreement) § 1.20.

*Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing important role plaintiffs play as the "primary source of information concerning the claim[,]" including by responding to counsel's questions and reviewing documents).

The requested amount is also consistent with or below the amounts commonly approved in this Circuit. *See, e.g., Galloway*, 2020 U.S. Dist. LEXIS 238950, at *37-38 (approving $5,000 service award); *Curtis v. Genesis Eng'g Sols., Inc.*, No. 21 Civ. 722, 2022 U.S. Dist. LEXIS 65582, at *16 (D. Md. Apr. 8, 2022) (same); *Compton v. N. Cent. Va. Rests., Inc.*, No. 20 Civ. 73, 2022 U.S. Dist. LEXIS 159070, at *16 (W.D. Va. Sept. 2, 2022) (same for providing "valuable insight to class counsel throughout the case"); *Kirkpatrick*, 352 F. Supp. 3d at 507-08 (approving $10,000 service award).

In addition, service awards acknowledge that lead plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny, and that in doing so, assume greater personal and professional risks. *Rosales*, 2024 U.S. Dist. LEXIS 60970, at *19 ("Service awards are intended to compensate class representatives for work done on behalf of the class and to make up for financial or reputational risk undertaken in bringing the action." (quoting *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015)); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 25, 2007) (approving service award for named plaintiff, reasoning they assume the "risk of adverse actions by the employer or co-workers."). Here, those concerns are particularly acute as Plaintiffs brought an individual retaliation claim for Plaintiff O'Brien, and alleged facts that Smoothstack attempted to enforce the liquidated damages provision against Plaintiff Reed. These same considerations apply as to the Notice Declarants, without whom Plaintiffs might not have

succeeded in meeting the similarly-situated standard for notice to issue pursuant to 29 U.S.C. § 216(b).

> **D.    Plaintiffs' Counsel's Attorneys' Fees and Costs Are Reasonable.[3]**

An award of fees and expenses is mandatory under the FLSA to the prevailing plaintiff. 29 U.S.C. § 216(b).  Significantly, "the FLSA contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expenses for legal fees or costs.'" *Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 09 Civ. 58, 2010 U.S. Dist. LEXIS 47511, at *3-4 (W.D. Va. May 5, 2010) (quoting *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946)). Therefore, "the FLSA requires judicial review of the reasonableness of counsel's legal fees to ensure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Id.* (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)).

Under the Settlement, Plaintiffs negotiated a separate recovery of $189,000 in attorneys' fees and costs from Defendant.  As set forth below, this fee and expense award is reasonable based on Fourth Circuit criteria and should be approved.

> **1.    Criteria For Determining Reasonableness of Attorneys' Fees.**

"The Court typically evaluates the reasonableness of attorneys' fees by comparing the requested amount to the lodestar amount, which is defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Epps v. Scoffolding Sols. LLC.*, 17 Civ. 00562, 2019 U.S. Dist. LEXIS 217413, at *13 (E.D. Va. Dec. 11, 2019) (quoting *Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008)).  *See also Mercer v. Duke Univ.*, 401 F.3d 199, 211 (4th Cir. 2005) ("[T]he determination of a reasonable fee is an intensively fact-bound matter for the trial court to

---

[3]    Defendant takes no position on this Section.

determine in the sound exercise of its discretion.").  The Fourth Circuit has instructed district courts to consider the factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) in analyzing a fee request.

> **2.    The Fees are Reasonable Based on an Analysis of the *Johnson* Factors.**

Here, as described further below, Plaintiffs' counsel's lodestar — the amount of fees they have reasonably and necessarily incurred in the litigation of this matter through September 2025 — is $530,138.75, with an additional $30,957.49 in expenses.  Elkin Decl. ¶¶ 59-61; *see also* Ex. 2 (Hours Summary); Ex. 3 (Costs Summary).[4]  Thus, the negotiated amount of $189,000 in fees and expenses, comprising $158,042.51 in fees and $30,957.49 in expenses reflects a significant discount and is more than reasonable.  Indeed, Plaintiffs' counsel were willing to accept a substantial discount on their fees in order to achieve the Settlement.  Plaintiffs and Collective Members were also given the opportunity but did not object to the requested fee.  Elkin Decl. ¶ 53.  In addition, the application of the twelve *Johnson* factors further supports approval of the attorneys' fees and expenses set forth in the Settlement.

> **a.    Plaintiffs' Counsel Expended Significant Time and Labor on This Case (*Johnson* Factor 1)**

The time and labor expended by Plaintiffs' counsel in litigating this case has been reasonable and necessary, particularly given the significant work performed.  In addition to the pre-filing investigation and research into Plaintiffs' minimum and overtime wage claims, this case involved two necessary amendments to the complaint, two contested motions to dismiss, a contested motion for conditional certification requiring both an opening and reply brief, with a related contested motion for supplemental notice, as well as responding to the Court's requests

---

[4]    This is the Plaintiffs' counsel's total lodestar after the exercise of billing judgment and reducing time to eliminate redundancy.

for supplemental briefing involving novel questions of FLSA regulations with respect to the

Department of Labor's separate government enforcement action and the FLSA's rights-

termination provision. Each of these briefs required extensive research and drafting. Plaintiffs'

motion for conditional certification also required working with Plaintiff O'Brien and two Notice

Declarants to draft and finalize declarations, as well as drafting the proposed notices, as well as

briefing and prevailing on Plaintiffs' motion for supplement notice. *See* Dkt. Nos. 31, 32, 52, 53.

Moreover, as detailed above, Plaintiffs' counsel engaged in significant written discovery,

including responding to a total of 120 document requests and 51 individual interrogatories served

on Plaintiff O'Brien and three opt-in Plaintiffs. Elkin Decl. ¶ 50. Plaintiffs' counsel further

engaged in significant damages analysis, legal research, and ongoing client consultation to

prepare settlement demands and attend the Court-ordered mediation session. This resulted in

Plaintiffs' counsel performing over 1,311.4 hours of work litigating this matter through

September 2025. Elkin Decl. ¶ 59; Ex. 2 (Hours Summary).[5] To date, Plaintiffs' counsel have

not received any payment for this work. The requested fee is not based solely on the time and

effort already expended, but it is also meant to compensate Plaintiffs' counsel for time they will

spend administering the Settlement in the future, including through the settlement administration

process.

> **b.    The Complexity of Issues and Required Skill of Highly
> Talented Attorneys Warrant the Requested Fee (*Johnson*
> Factors 2, 3, and 9)**

Plaintiffs' counsel are highly skilled with extensive experience in this area of the law and

are held in high regard amongst wage and hour and employment law practitioners, including

challenges to training repayment provisions in employment contracts. Elkin Decl. ¶¶ 2-49. For

---

[5]    As noted above (at 17 n. 4), this is Plaintiffs' counsel's total hours after the exercise of
billing judgment and reducing time to eliminate redundancy.

example, lead counsel, Molly A. Elkin, has 30 years of civil litigation experience, has litigated
multiple wage and hour cases, and has been appointed to a number of positions reflecting her
standing in the wage and hour field.  Elkin Decl. ¶¶ 2-13.

Moreover, as detailed above, the issues raised in this case were complex and required
significant resources, interest, and experience to pursue the contingent claims.  For example, this
case involved a variety of complex and not-entirely-settled legal questions.  As an initial matter,
Plaintiffs' minimum wage and regular-rate claims require specialized knowledge of the FLSA to
identify, understand, and plead.  Moreover, Plaintiffs' counsel successfully moved to send notice
pursuant to the FLSA in an off-the-clock case in which putative collective members worked
remotely nationwide, which required specialized knowledge to identify, understand, and argue in
a motion.

> ### c.     Plaintiffs' Counsel Assumed Considerable Risk to Pursue This Action on a Contingency Basis (*Johnson* Factors 6 and 10)

Plaintiffs' counsel undertook prosecuting this case despite the risk that they would lose,
and without any assurance of payment, litigating it wholly on a contingent basis.  Elkin Decl. ¶
58.  Plaintiffs benefited from experienced counsel handling this case, and, Plaintiffs' counsel
bore all litigation expenses and assumed the risk of non-payment if the Plaintiffs' claims were
ultimately unsuccessful.

In addition, the "undesirability" of the case supports Plaintiffs' counsel's fee request.
Plaintiffs brought this case on a contingency fee basis (but are not taking a contingency fee) and
under fee-shifting statute, so Plaintiffs' counsel accepted knowing they would receive payment
only if the Plaintiffs won or settled.  Moreover, this case included novel claims challenging
liquidated damages provisions in Smoothstack's employment agreements, which likely made it

less likely that putative collective members would join the case or for Plaintiffs' counsel to speak with witnesses to investigate the merits of the cases.

> **d.    The Requested Fee Comported with the Customary Fee for Similar Work (*Johnson* Factors 5 and 12)**

The fifth and twelfth factors focus on the customary fee (*Johnson* factor 5) and awards in similar cases (*Johnson* factor 12).  Plaintiffs' counsel's hourly rates for attorney time in this case range from $240 to $665 per hour.  The fee rates utilized, which are further set forth in Exhibit 2 to the Declaration of Molly A. Elkin, are provided by the "Vienna Metro Matrix," as laid out in *JK Moving & Storage Inc. v. Winmar Construction, Inc.*, which provides "the customary rates" for litigation in the "Northern Virginia area." No. 17 Civ. 1213, 2018 U.S. Dist. LEXIS 241866, at *7-8 (E.D. Va. June 20, 2018) (citing declaration at *Vienna Metro LLC v. Pulte Home Corp.*, No. 10 Civ. 502, Dkt. 263 (E.D. Va. Aug. 24, 2011)); *see* Elkin Decl. ¶ 60 & Ex. 2 (Hours Summary).

The Vienna Metro Matrix rates have been used repeatedly in FLSA cases.  *See, e.g., Diaz v. RM Constr. LLC*, No. 21 Civ. 1192, 2022 U.S. Dist. LEXIS 134605, at *22-23 (E.D. Va. June 17, 2022); *Rodkey v. Griffin*, No. 20 Civ. 0329, 2020 U.S. Dist. LEXIS 253996, at *26 (E.D. Va. Nov. 30, 2020); *Gomez v. Seoul Gool Dae Gee Inc.*, 434 F. Supp. 3d 381, 385-86 (E.D. Va. 2020); *Cho v. Joong Ang Daily News Washington, Inc.*, No. 18 Civ. 1062, 2020 U.S. Dist. LEXIS 38055, at *13 (E.D. Va. Mar. 4, 2020); *Schmidt v. FCI Enterprises LLC*, No. 18 Civ. 1472, 2020 U.S. Dist. LEXIS 97585, at *10 (E.D. Va. Jan. 3, 2020), *rev'd on other grounds*, 3 F.4th 95 (4th Cir. 2021).  Notably, the rates published in *JK Moving & Storage* — which Plaintiffs rely upon in the instant litigation — are the same rates used in the original Vienna Metro case in 2011.  2018 U.S. Dist. LEXIS 241866, at *7-8.  These rates are therefore almost

14 years old at this point, despite any increase in typical legal fees — and any inflation more broadly — that has occurred in that time.

In addition, the requested fees — which represent approximately 30% of Plaintiffs' total lodestar — are in line with fee awards approved in this District in FLSA cases. Furthermore, it is acceptable that the attorneys' fees are "more than the plaintiffs' recovery." *Carroll v. Northampton Restaurants, Inc.*, No. 21 Civ. 115, 2024 U.S. Dist. LEXIS 51220, at *43 (E.D. Va. Mar. 21, 2024). "This is 'not an uncommon result' in FLSA cases, where attorneys' fees can 'substantially exceed damages.'" *Id.* (quoting *Cho*, 2020 U.S. Dist. LEXIS 38055, at *29-30). Thus, in *Carroll*, the Court approved attorneys' fees equal to roughly twice the amount recovered for Plaintiffs and reflecting approximately 83% of the initial lodestar amount.  *Id.* at *42-43; *see also Cho*, 2020 U.S. Dist. LEXIS 38055, at *29-30 (approving attorneys' fees equaling roughly 2.5 times the recovery); *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 370 (E.D. Va. 2021) (approving attorneys' fees equaling less than half of the lodestar and approximately two-thirds of the recovery); *Hoffman v. Bear Chase Brewing Co., LLC*, No. 21 Civ. 1443, 2024 U.S. Dist. LEXIS 62632, at *25-26, *33 (E.D. Va. Mar. 19, 2024) (approving attorneys' fees of approximately four times the recovery and 70% of the initial lodestar); *Hargrove v. Ryla Teleservs., Inc.*, 11 Civ. 344, 2013 U.S. Dist. LEXIS 63902, at *24, *27 (E.D. Va. April 12, 2013) (approving attorneys' fees equaling less than half of initial lodestar amount); *Gholston v. Smithfield Foods Inc.*, No. 21 Civ. 194, 2022 U.S. Dist. LEXIS 247816, at *18 (E.D. Va. Nov. 2, 2022) (approving attorneys' fees equal to approximately 70% of the total settlement amount).

### e.    Plaintiffs' Counsel's Efforts Achieved a Successful Result (*Johnson* Factor 8)

The degree of success obtained is "the most critical factor" in determining a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  Here, this factor supports approval of the fee

requested given the substantial success achieved through settlement. After deductions for

payment of attorneys' fees and expenses, as well as Settlement Administrator costs, Collective

Members who participated or performed work during the Application Phase will recover 34% of

backpay and liquidated damages; Collective Members who participated or performed work

during the Training Phase will recover 57% of backpay and liquidated damages; and Collective

Members who participated or performed work during the Assignment Phase will recover 22% of

backpay and liquidated damages. Elkin Decl. ¶ 54. Moreover, Plaintiff O'Brien's Individual

Settlement Amount represents approximately 26% of his likely maximum recovery, if the case

proceeded to trial. *Id.* ¶ 55. Given the uncertainty surrounding their primary claims, and the

heavily-contested, long road ahead if this case does not settle, such a recovery represents a fair

result for Plaintiffs. *See* supra at 10-11 (collecting cases).

To the extent that Plaintiffs' counsel's hours should be discounted some amount for work

on any motion that was unsuccessful or unrenewed, the substantial discount that Plaintiffs'

Counsel is taking on their lodestar already accounts for that. As discussed above, Plaintiffs'

lodestar is $530,138.75, yet Plaintiffs will recover only $158,042.51 in fees under the settlement,

reflecting a discount equal to approximately 70% of their fees.

Plaintiffs' counsel zealously represented their clients and exercised good billing

judgment. Elkin Decl. ¶ 59. In *Castel v. Advantis Real Estate Services Company*, the court

explained that, in such situations, an "award of attorney fees encourages the vindication of

employees' rights" and "note[d] that a substantial reduction based on the amount of damages

awarded to plaintiffs would serve as an incredible disincentive for attorneys to accept FLSA

cases." No. 07 Civ. 435, 2008 U.S. Dist. LEXIS 61318, at *14 (E.D. Va. Aug. 8, 2008).

### f.    The Remaining *Johnson* Factors Support the Fee Request (*Johnson* Factors 4, 7, and 11)

The remaining factors — including any imposed time limits on prosecuting the case (*Johnson* factor 7); the length and nature of the professional relationship with the clients (*Johnson* factor 11); and the preclusion of other work (*Johnson* factor 4) — weigh in favor of granting the fee request.  Here, Plaintiffs' counsel  represented Plaintiff O'Brien for over two years and Plaintiff Reed for over one year in litigation and worked closely and consistently with Plaintiffs to educate them on their claims and the litigation process, investigate the nature of the claims, conduct written and in-person discovery, and reach an excellent settlement.

In addition, Plaintiffs' counsel work for plaintiffs-side firms and non-profit organizations that do not have infinite resources and instead, must carefully monitor the amount of time required by existing cases in determining whether to accept or pursue other matters.  It is well-established that "[p]riority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F.2d at 718.  Given the complexity of the issues, briefing, research, and settlement negotiations, this case required substantial time and effort, which precluded the involved attorneys from performing other available, fee-generating work during the relevant time period.  This was considered by Plaintiffs' counsel in deciding what fee-generating cases and other matters it could, and could not, pursue during this time.  That is, to ensure the best possible result for Plaintiffs and Collective Members, Plaintiffs' counsel focused a tremendous amount of time and resources on resolving the matter, which inevitably took away from other matters.

### 3.    Plaintiffs' Counsel's Expenses Are Reasonable.

Plaintiffs also seek an award of $30,957.49 in costs.  The FLSA provides for an award of costs, in addition to fees, to a prevailing plaintiff.  29 U.S.C. § 216(b).  It is well established that an award of attorneys' fees under a fee shifting statute such as the FLSA also includes an award

of the out-of-pocket costs incurred in sustaining the litigation, including filing fees and legal

research costs, which are a customary part of attorneys' fees for professional services. *Missouri*

*v. Jenkins*, 491 U.S. 274, 285-89 (1989).

Here, all of the expenses sought are for items such as filing fees, legal research, sending

notice to putative collective members, travel for court conferences and mediation, and other costs

that are a customary part of attorneys' fees for professional services. Elkin Decl. ¶ 61 & Ex. 3

(Summary of Costs). These expenses were necessarily incurred in the preparation and

presentation of this litigation, are normally billed to the firm's paying clients, and should be

approved. Elkin Decl. ¶ 61.

## V.      Conclusion

For the reasons set forth above, the Parties respectfully requests that the Court issue an

order substantially similar to the Proposed Order attached hereto: 1) approving the Settlement as

reasonable, fair, and adequate; (2) authorizing the distribution of payments in accordance with

the terms of the Settlement; (3) approving a Service Award of $5,000 for each Named Plaintiff

and $500 for each Notice Declarant; (4) approving $189,000 in Attorneys' Fees and Costs; (5)

dismissing the case with prejudice; and (6) retaining jurisdiction to enforce the Settlement.

Date: September 30, 2025

By: /s/ Zach Miller
Zach Miller, Esq. (VSB No. 85860)
Dirk McClanahan, Esq. (VSB No. 81208)
McClanahan Powers, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Telephone: (703) 520-1326
Email: zmiller@mcplegal.com
Email: dmcclanahan@mcplegal.com

Respectfully submitted,

By: /s/ Molly Elkin
Molly Elkin (Va. Bar No. 40967)
Rachel Lerner*
**McGillivary Steele Elkin LLP**
1101 Vermont Ave NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 833-8855
Email: mae@mselaborlaw.com
Email: rbl@mselaborlaw.com

*Counsel for Smoothstack, Inc.*

Rachel W. Dempsey*
**Towards Justice**
PO Box 371680, PMB 44465
Denver, CO 80237
Telephone: (720) 441-2236
Email: rachel@towardsjustice.org

Jahan C. Sagafi*
**Outten & Golden LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8837
Email: jsagafi@outtengolden.com

Courtney J. Hinkle*
**Outten & Golden LLP**
1225 New York Ave, NW Suite 1200B
Washington, D.C. 20005
Telephone: (202) 915-5810
Email: chinkle@outtengolden.com

Persis Yu*
**Student Borrower Protection Center**
(a fiscally sponsored project of the Shared
Ascent Fund)
1025 Connecticut Ave NW, #717
Washington, D.C. 20036
Telephone: (202) 670-3871
Email: persis@protectborrowers.org

* Admitted *Pro hac vice*

*Counsel for Plaintiffs and the FLSA Collective*