# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| JUSTIN O'BRIEN and SKYLAR REED, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>  v.<br><br>SMOOTHSTACK, INC.,<br><br>               Defendant. | **Civil Action No. 1:23-cv-00491-RDA-LRV** |

## SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs Justin O'Brien and Skylar Reed ("Named Plaintiffs") and Smoothstack, Inc. ("Smoothstack" or "Defendant") (collectively with Named Plaintiffs, the "Parties") hereby enter into this Settlement Agreement and Release (the "Agreement") to resolve the wage and hour claims of Plaintiffs and similarly situated individuals (as set forth more fully below).

## RECITALS

**WHEREAS**, on April 13, 2023, Plaintiff O'Brien filed the above-captioned collective action, which was amended on May 25, 2024 (ECF No. 19), and July 16, 2024 (ECF No. 79), at which time Plaintiff Reed was added (the "Litigation");

**WHEREAS**, in their Complaint, Named Plaintiffs allege that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), by failing to pay them and other similarly-situated employees the minimum and overtime wages owed under the law, as well as various Virginia state-law claims;

**WHEREAS** Plaintiff O'Brien alleges that he was unlawfully terminated in retaliation for protected activity under the FLSA;

**WHEREAS**, on March 28, 2024, the Court certified a collective action pursuant to the FLSA, 29 U.S.C. § 216(b) (ECF No. 44), and certain individuals filed consent-to-join ("CTJ") forms to opt-in to this Litigation ("Collective Members"), including the Named Plaintiffs;

**WHEREAS**, on July 11, 2025, the Court entered a memorandum opinion and order, granting-in-part and dismissing-in-part Smoothstack's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 112) and ordered the parties to, *inter alia*, confer regarding the possibility of a prompt settlement of the matter on the surviving claims (Counts 1, 2, 8, and 9);

**WHEREAS**, on July 29, 2025, the Parties notified the Court that they had reached a settlement in principle and filed a Notice of Settlement and Joint Request for Stay of Proceedings (ECF No. 115);

**WHEREAS**, on July 30, 2025, the Court granted the Parties' Joint Request for Stay of Proceedings (ECF No. 118);

**WHEREAS**, Smoothstack expressly denies any and all liability, wrongdoing, or unlawful conduct of any kind with respect to the allegations, claims, and causes of action asserted in the Litigation, including but not limited to any alleged violations of the Fair Labor Standards Act, or any other federal, state, or local laws or regulations. Smoothstack further denies that it engaged in any retaliatory conduct, failed to pay any wages, misclassified any employees, or violated any legal duty owed to Plaintiffs, the Collective Members, or any other individuals;

**WHEREAS**, the purpose of this Agreement is to settle fully and finally the remaining claims raised by Named Plaintiffs in the Complaint, and to avoid the burden, expense, inconvenience, and uncertainty of further litigation. Nothing in this Agreement, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Smoothstack of any fault, liability, or wrongdoing whatsoever;

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of Named Plaintiffs' and Collective Members' claims; obtained and analyzed payroll data; and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of further litigation, including the possibility that the claims, if not settled now, might not prevail, might not result in any recovery, or might result in a recovery less favorable, and that in the event of a recovery it would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of the Collective Members; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the claims on the following terms and conditions:

**1.   DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**   **Agreement** means this Settlement Agreement and Release and exhibits attached thereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

**1.2**   **Application Phase** means the first two to three weeks period prior to the start of the Training Phase.

**1.3**   **Approval Order** means an Order to be entered by the Court, which gives approval to the Settlement and this Agreement.

1.4 **Approval Motion** means the motion for settlement approval to be filed with the United States District Judge pursuant to Section 3.1, which terms shall be mutually agreed upon by the Parties.

1.5 **Assignment Phase** means the period after a Smoothstack employee completes the Training Phase and is placed on assignment with a Smoothstack client

1.6 **Attorneys' Fees and Costs** means such funds as may be awarded by the Court to Plaintiffs' Counsel to compensate them for their attorneys' fees and reimbursement for out-of-pocket costs.

1.7 **Check Cashing Period** means the ninety (90) Day period beginning the day the Settlement Administrator sends the Settlement Checks to Collective Members.

1.8 **Complaint** means the Second Amended Complaint (ECF No. 79).

1.9 **Collective List** means the list, in electronic form, provided by the Parties to the Settlement Administrator, of the names, social security numbers, and other reasonable information the Settlement Administrator needs to calculate and distribute amounts owed under this Agreement to each Collective Member.  Specifically, Plaintiffs shall provide the names of Collective Members, their contact information, and which periods (i.e., Application Phase, Training Phase, Assignment Phase) Plaintiffs participated in based on Defendant's records, and Defendant shall provide social security numbers, if available in Defendant's records, and other information, as needed.

1.10 **Collective Members** or **Collective** means the individuals who submitted Consent-to-Join ("CTJ") forms and opted into this Litigation, including the two Named Plaintiffs.

1.11 **Days** means calendar day(s).

1.12 **Defendant** or **Smoothstack** means Smoothstack, Inc.

1.13 **Defendant's Counsel** means McClanahan Powers, PLLC.

1.14 **Effective Date** means the date of the Court's entry of the Approval Order.

1.15 **Employer Payroll Taxes** means all taxes and withholdings an employer is required to make pursuant to federal, state, and/or local law arising out of or based upon the payment of employment compensation considered to be wages in this Action, including but not limited to FICA, FUTA, and SUTA obligations.

1.16 **Excluded Claims** means any and all claims related to the liquidated damages training provision in Smoothstack's employment agreement(s), including but not limited to federal and/or state claims for failure to pay wages free-and-clear and/or wages kicked back, on behalf of any Collective Member who was alleged to have kicked-back amounts pursuant to the liquidated damages training provision in their employment

agreement(s).

1.17   **Funding Date** means thirty (30) Days after the Court's approval of the Settlement.

1.18   **Individual Settlement Payment** means the Twenty-Thousand Dollars ($20,000) to be paid to Plaintiff Justin O'Brien for his individual retaliation claim.

1.19   **Net Fund** means the remainder of the Total Settlement Amount after deductions for: (i) costs of settlement administration (expected to be approximately $5,000); (ii) Court-approved Attorneys' Fees and Costs, as provided for in Section 5.3 (requested to be $189,000) (the "Attorneys' Fees and Costs"); (iii) Court-approved Service Awards, as provided for in Section 5.4 (requested to be $11,000); and (iv) Plaintiff O'Brien's Individual Settlement Payment (requested to be $20,000).  If the Court approves Plaintiffs' Approval Motion in full, the Net Fund shall be One-Hundred Thousand Dollars ($100,000),

1.20   **Notice Declarant(s)** means Ogah "Jackreece" Ejini and Long Nguyen, who submitted declarations in support of Plaintiffs' motion for conditional certification (ECF No. 32, 33).

1.21   **Participating Collective Members** means Collective Members who cash and/or deposit a Settlement Check.

1.22   **Parties** collectively means Named Plaintiffs and Defendant.

1.23   **Release Period** means April 13, 2020, through July 29, 2025.

1.24   **Named Plaintiffs** means Justin O'Brien and Skylar Reed.

1.25   **Plaintiffs' Counsel** means McGillivary Steele Elkin LLP, Outten & Golden LLP, Towards Justice, and Student Borrower Protection Center (a fiscally sponsored project of the Shared Ascent Fund).

1.26   **Proposed Order** means a proposed order to be submitted to the Court to approve this Agreement.

1.27   **Qualified Settlement Fund** or **QSF** means the account maintained by the Settlement Administrator.

1.28   **Released Claims** means the wage and hour claims pled in the Complaint or that could have been pled based on the facts alleged in the Complaint, and that accrued during FLSA Collective Members' employment at Smoothstack during the Release Period, including, without limitations, claims for unpaid minimum and overtime wages, failure to pay wages free and clear and/or wages kicked back, failure to pay wages at the proper overtime rate, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, excluding the Excluded Claims.

1.29   **Reminder** means reminder in a form substantially similar to **Exhibit A**.

1.30   **Service Award(s)** means the Court-approved award of up Five Thousand Dollars ($5,000) to be paid to each of the two Named Plaintiffs, and Five Hundred Dollars ($500) to be paid to each of the two Notice Declarants, for a total of Eleven Thousand Dollars ($11,000) in recognition for their service to the Collective.

1.31   **Settlement** means the settlement between the Parties embodied and contained in this Agreement.

1.32   **Settlement Administrator** means ILYM Group, Inc.

1.33   **Settlement Amount** means each Collective Member's share of the Net Fund calculated in accordance with this Agreement.

1.34   **Settlement Check** means the check issued to Collective Members for their Settlement Amount.

1.35   **Total Settlement Amount** means Three Hundred Twenty-Five Thousand Dollars ($325,000.00), which includes Attorneys' Fees and Costs; the relevant wage and hour claims of Collective Members; Service Awards; all penalties, liquidated damages, and interest; O'Brien's Individual Settlement Payment, and costs of settlement administration.  Smoothstack shall pay the Employer Payroll Taxes in addition to the Total Settlement Amount.

1.36   **Training Phase** means the period of training after individuals complete the Application Phase and sign an employment agreement.

2.   **APPLICATION FOR SETTLEMENT APPROVAL**

2.1   **Approval Motion.**  Plaintiffs' Counsel shall submit the Approval Motion to the Court within fourteen (14) Days of the date this Agreement is fully executed.  Plaintiffs' Counsel shall provide Defendant's Counsel with a draft of the Approval Motion brief and proposed order within seven (7) Days prior to the filing of the Approval Motion. Defendant shall provide any proposed edits within three (3) Days of receipt of the documents.  Among other things, the Approval Motion will ask the Court to: (i) enter the Approval Order stating that the Settlement is fair, adequate, and reasonable, (ii) incorporate the terms of this Settlement, (iii) enter an Order dismissing the case with prejudice, and (v) retain jurisdiction to enforce the Agreement.

2.2   **Effect of Court's Failure to Approve Settlement.**  If the Court fails to enter the Approval Order, the Parties shall confer in good faith to renegotiate the terms of the Settlement and re-submit the settlement for court approval. If approval is denied again, or a mutually agreed-upon settlement is not approved, the Parties will be in the same positions as if settlement approval had not been attempted.

3.   **SETTLEMENT ADMINISTRATION**

3.1   **Identity.**  The Settlement Administrator will be ILYM Group, Inc. .

**3.2  Duties of the Settlement Administrator.**  The Settlement Administrator will be responsible for: (1) establishing a QSF account; (2) preparing, printing, and disseminating to Collective Members the Settlement Checks and Reminders; (3) updating addresses with the U.S. Postal Service's National Change of Address ("NCOA") database; (4) maintaining an email address which Collective Members can use to make inquiries; (5) making commercially reasonable searches for new contact information for Collective Members whose Settlement Check is returned as undeliverable with no forwarding address; (6) determining the Settlement Amount allocated to each Collective Member in accordance with this Agreement, along with the amount of all payroll taxes to be paid and deductions to be withheld; (7) distributing any approved Service Awards and Attorneys' Fees and Costs; (10) calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; (11) determining the tax characterization of Service Awards; (12) calculating the tax liability of Defendant; (13) referring to Plaintiffs' Counsel all inquiries by Collective Members regarding matters not within the Settlement Administrator's duties specified herein; (14) retaining and providing a copy of Settlement Checks endorsed by Participating Collective Members; (15) preparing a final accounting of funds remaining in the QSF after the Check Cashing Period and distributing the remaining funds in accordance with this Agreement; and (16) such other tasks as set forth herein, or as the Parties mutually agree, or as otherwise determined by the Settlement Administrator as necessary in effectuating its notice duties.

**3.3  Settlement Administrator Fees and Costs.**  The fees and costs of the settlement administrator shall be paid from the Total Settlement Fund of up to $5,000.

**3.4  Settlement Administrator Indemnity.**  The Settlement Administrator shall indemnify the Parties and counsel regarding any improper handling of its responsibilities, including the handling of any tax-related matters.

**3.5  Access to the Settlement Administrator.**  The Parties will have equal access to the Settlement Administrator throughout the settlement administration period.  The Settlement Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of Settlement Checks and Reminders.

**3.6  Cooperation and Provision of Information.**  Defendant agrees to cooperate with the Settlement Administrator and provide accurate information to the extent reasonably available and necessary to calculate the amounts to be distributed pursuant to this Agreement.

## 4.  NOTICE AND SETTLEMENT CHECKS

**4.1  Collective List.**  Within seven (7) Days after the Effective Date, the Parties shall provide the Settlement Administrator with the Collective List.  Within seven (7) Days of receiving the Collective List, the Settlement Administrator shall provide the Parties with its calculations.

**4.2  Settlement Check Distribution.**  Within fourteen (14) Days of the Funding Date, the Settlement Administrator shall send Settlement Checks to each Collective Member.

4.3 **Reminders.** After thirty (30) and sixty (60) days from the issuance of Settlement Checks, the Settlement Administrator shall issue a Reminder via postcard and email to Collective Members who have not cashed their checks, reminding them to cash their checks. Plaintiffs' Counsel and the Settlement Administrator will make reasonable efforts to contact Collective Members for whom the Settlement Check is returned by the post office as undeliverable and the Settlement Administrator shall attempt a re-mailing to any Collective Members for whom it obtains more recent contact information, provided that except in extenuating circumstances no remailings shall occur after the 90th Day.

4.4 **Check Cashing Period.** Collective Members shall have ninety (90) Days following the issuance of checks to cash their checks. Any checks that remain uncashed after end of the Check Cashing Period shall be void and the associated monies shall revert to the appropriate state's Unclaimed Property Fund in the payee's name.

4.5 **Participant List.** Within seven (7) Days after the end of the Check Cashing Period, the Settlement Administrator will provide Plaintiffs' Counsel and Defense Counsel a list of Participating Collective Members.

5. **SETTLEMENT TERMS**

5.1 **Settlement Payments**

    a. **Total Amount.** Defendant agrees to pay the Total Settlement Amount.

    b. **Funding Date.** Defendant shall pay the Total Settlement Amount on the Funding Date.

    c. **Timing of Payments.**

        1. Within fourteen (14) Days of the Funding Date, the Settlement Administrator will distribute the money in the QSF by making the following payments:

            i. Mailing Settlement Checks to Collective Members;

            ii. Paying the Court-approved Service Awards, as described in Section 5.4;

            iii. Paying the Individual Settlement Amount to Plaintiff O'Brien;

            iv. Paying (via wire transfer) Court-approved Attorneys' Fees and Costs, as described in Section 5.3;

            v. Paying the Settlement Administrator's costs.

**5.2** **Uncashed checks.** Any checks that are not cashed within ninety (90) Days following the issuance of the check shall be void and the associated monies shall revert to the appropriate state's Unclaimed Property Fund.

**5.3** **Attorneys' Fees and Costs.**

    a. In the Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of the Attorneys' Fees and Costs from the Total Settlement Amount as an award of attorneys' fees and reimbursement of their reasonable out-of-pocket costs and expenses. Defendant shall not oppose this application.

    b. The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. Any amount not approved by the Court shall become part of the Net Fund.

**5.4** **Service Awards.**

    a. In addition to payment as a Collective Member, in the Approval Motion, Named Plaintiffs will apply to the Court to receive Five Thousand Dollars ($5,000) each, for a total of Ten Thousand Dollars ($10,000) from the Total Settlement Amount, for the services they rendered to the Collective. Defendant shall not oppose this application.

    b. In addition to payment as a Collective Member, in the Approval Motion, Plaintiffs' Counsel will apply to the Court to receive Five Hundred Dollars ($500) for each Notice Declarant, for a total of One Thousand Dollars ($1,000) from the Total Settlement Amount, for the services they rendered to the Collective. Defendant shall not oppose this application.

    c. The substance of Plaintiffs' application for Service Awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. Any amount not approved by the Court shall become part of the Net Fund.

    d. Named Plaintiffs agree to a general release of their claims in exchange for receiving and accepting their Service Awards, as described in further detail in Section 6.3.

**5.5** **Collective Members' Payments.** The settlement amount for each Collective Member will be determined by the Settlement Administrator pursuant to the following formula:

    a.     The Net Fund shall be allocated as follows:

        1.     Thirty-Nine Thousand Dollars ($39,000) for the Application Phase;

        2.     Fifty-Five Thousand Dollars ($55,000) for the Training Phase;

        3.     Six Thousand Dollars ($6,000) for the Assignment Phase.

    b.     Each Collective Member who participated or performed work during any of the three relevant time periods (Application Phase, Training Phase, and Assignment Phase) shall receive an equal share of the portion of the Net Fund allocated to that time period. If a Collective Member performed work in more than one relevant time period, they shall receive a share for each relevant portion of the Net Fund, as determined by the Settlement Administrator based on Smoothstack's records, as supplemented by any input from Collective Members, Plaintiffs' Counsel, and Smoothstack.

**5.6**   **Individual Settlement Payment.** To resolve Plaintiff O'Brien individual FLSA retaliation claim (Count 8), Defendant will pay the Individual Settlement Payment from the Total Settlement Amount.

**5.7**   **Defendant's Payroll Tax Responsibility and Tax Characterization.**

    a.     For payments from the Application Phase portion of the Net Fund, one-hundred percent (100%) shall be treated as non-wage compensation (Form 1099-MISC). For payments from the Training Phase and/or Assignment Phase portion(s) of the Net Fund, fifty percent (50%) shall be treated as wage compensation (Form W-2) and fifty percent (50%) shall be treated as non-wage compensation (Form 1099-MISC).

    b.     Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. Payments treated as non-wage compensation (Form 1099-MISC) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security Number on an IRS Form 1099-MISC.

    c.     The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks

    and Service Awards and issuing IRS Forms W-2 and Form 1099. Defendant shall pay the Employee Payroll Taxes in addition to the Total Settlement Amount.

d. Payments of Attorneys' Fees and Costs, pursuant to Section 5.3, shall be made without withholding and shall be reported to the IRS and to Plaintiffs' Counsel on an IRS Form 1099-MISC.

e. Payment of Service Awards, pursuant to Section 5.4, shall be made without withholding and, to the extent required by law, shall be reported to the IRS and to Named Plaintiffs and Notice Declarants on an IRS Form 1099-MISC.

f. Payment of Named Plaintiff O'Brien's Individual Settlement Payment pursuant to Section 5.6 shall be made without withholding and shall be reported to the IRS and to Named Plaintiff O'Brien on an IRS Form 1099-MISC.

g. Defendant and the Settlement Administrator shall exchange such information as is necessary for the Settlement Administrator to make proper tax withholdings and comply with its tax reporting obligations.

h. The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Collective Member. The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Collective Members or any payments to Named Plaintiffs. Neither Plaintiffs' Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

6. **RELEASE OF CLAIMS**

6.1 **Release by Collective Members.** Each Participating Collective Members shall execute a "back of the check" release, containing a written release that releases and discharges Smoothstack from the Released Claims.

    **RELEASE OF CLAIMS:**

    By signing and/or cashing this check, I agree to be bound by the Agreement negotiated by Plaintiffs' Counsel in this case. I release and discharge the Released Claims, including FLSA wage and hour claims alleged in the complaint, or that could have been alleged based on the facts alleged in the complaint, and that accrued during my employment at Smoothstack during the Release Period.

**6.2** **Release by Smoothstack.** Conditioned upon the Court's entry of the Approval Order Smoothstack shall waive, release, and discharge Collective Members from all demands, claims and actions, related to their employment or termination of their employment with Defendant, including but not limited to claim(s) for breach of their employment agreement(s) related to the liquidated damages provision and/or service commitment requirement contained therein. For avoidance of doubt, this release means that Smoothstack shall forever release all claims as to all Collective Members, including Named Plaintiffs, regarding the liquidated damages training provision, including a service commitment requirement, and Smoothstack shall not attempt to enforce the liquidated damages provision contained in such agreement(s), including for breach of the agreement(s). Smoothstack agrees to additionally waive, release, and discharge Named Plaintiffs from any and all demands, claims and actions, whether known or unknown, relating to their employment with Defendant.

**6.3** **Release by Named Plaintiffs.** In the event the Court approves, and Named Plaintiffs receive a Service Award, they will each additionally waive, release, and discharge the Defendant from all demands, claims and actions, whether known or unknown, relating to their employment or the termination of their employment with Defendant, including but not limited to claims under the Americans With Disabilities Act, Fair Labor Standards Act (including but not limited to claims for overtime compensation), Equal Pay Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, Age Discrimination in Employment Act, and any other federal, state or local statute, regulation, and order, and in common law, through the date they sign this Agreement; provided, however, that Plaintiff O'Brien does not release his FLSA retaliation claim unless the Court approves, and he receives his Individual Settlement Amount. Named Plaintiffs further do not waive the right to file a charge or complaint with any administrative agency, but do waive any right to recover or receive any damages or other personal relief based on any demand, claim or action waived in this Paragraph brought on their own behalf or by any third party, including as a member of any collective or class action. Named Plaintiffs do not release any claim or right that cannot be released as a matter of law.

## 7. LIMITATION OF PUBLICITY.

**7.1** Before this Agreement is publicly filed, Named Plaintiffs and Plaintiffs' Counsel agree to maintain its confidentiality, although the parties agree that Plaintiffs' Counsel will discuss the Settlement with the Collective Members before publicly filing it. After its filing, Defendant, Named Plaintiffs, and Plaintiffs' Counsel agree not to publicize this Agreement, or cause it to be publicized, by posting its terms in social media outlets, affirmatively soliciting media coverage, issuing press releases, or publicizing or promoting the Agreement; provided, however, that Plaintiffs' Counsel may issue a neutral statement on their website (e.g., the parties have mutually resolved the matter). Nothing herein shall limit Named Plaintiffs or Plaintiffs' Counsel from communicating with Collective Members or Participating Collective Members regarding the Settlement or taking necessary action to effectuate the terms of the Settlement or make financial decisions regarding the Settlement, such as seeking tax or planning advice, or discuss the Settlement with local, state, or federal government official(s). Nothing herein shall limit Plaintiffs' Counsel from describing their experience to courts, arbitrators, or the public in

PageID# 1339

court submissions, and nothing shall restrict Plaintiffs' Counsel's right to practice law, including using publicly available information or general experience from this matter in future representations.

**8. PARTIES' AUTHORITY**

**8.1** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

**9. MUTUAL COOPERATION**

**9.1** The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.

**10. NO ADMISSION OF LIABILITY**

**10.1** Defendant expressly denies all of the allegations made by Named Plaintiffs and denies that it is liable to, or owes damages to, any person or entity with respect to the facts, claims, or causes of action asserted in the Litigation. Defendant further denies that it engaged in any unlawful conduct, including but not limited to violations of the Fair Labor Standards Act, wage and hour laws, or any other federal, state, or local law. Defendant has not admitted, and does not admit, any fault, wrongdoing, liability, or damages of any kind, and nothing in this Agreement or in the settlement negotiations shall be construed or deemed to constitute such an admission by Defendant. This Agreement and the settlement reflected herein are the result of a compromise between disputed claims and are entered into solely for the purpose of avoiding the burden, expense, disruption, and uncertainty of continued litigation.

**11. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS**

**11.1** **Further Acts.** Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**11.2** **No Assignment.** Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in their claims, or any related action, and any attempt to do so shall be of no force or effect.

**11.3** **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

11.4 **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Defendant, its affiliates, parents, subsidiaries, predecessors, successors, employees, and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

11.5 **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

11.6 **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

11.7 **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

11.8 **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of Virginia, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

11.9 **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

11.10 **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

11.11 **Counterparts.**  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

11.12 **Facsimile, Electronic, and E-mail Signatures.**  Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile, e-mail, or electronic signature technology to counsel for the other party.  Any signature

made and transmitted by facsimile, e-mail, or electronic signature technology for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, e-mail, or electronic signature technology.

**11.13  Signatories**.  This Agreement is valid and binding if signed by Defendant's authorized representatives and the Named Plaintiffs.

**WE AGREE TO THESE TERMS.**

**[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK, SIGNATURES TO THIS AGREEMENT COMMENCE ON THE NEXT PAGE]**

By: *Justin O'Brien*
    Justin O'Brien

Dated: September 28, 2025

By: _____
    Skylar Reed

Dated: _____, 2025

By: _____
    Smoothstack, Inc.
    Boris Kuiper, COO

Dated: _____, 2025


By:_____
      Justin O'Brien

Dated: _____, 2025

By: *Skylar Reed*
      Skylar Reed

Dated: September 26, 2025

By: _____
      Smoothstack, Inc.
      Boris Kuiper, COO

Dated: _____, 2025

By:_____
    Justin O'Brien

Dated: _____, 2025

By: *[signature]*
Smoothstack, Inc.
Boris Kuiper, COO

Dated: 9/26, 2025

By:_____
    Skylar Reed

Dated: _____, 2025

# EXHIBIT A

**Exhibit A (Check Cashing Reminder)**

**IMPORTANT REMINDER**
**CHECK CASHING DEADLINE**

Dear <<Name1>>:

On [DATE] you were mailed a settlement check for your portion of the Smoothstack Settlement. Our records reflect that you have **not** cashed your Settlement Check. This is to remind that you must cash your settlement check by [**INSERT DATE 90 DAYS FROM MAILING**] or your check will be void, any amount allocated to you will revert to the appropriate state's Unclaimed Property Fund under your name, and you will not be entitled to recover any portion of the settlement in the future.

If you did not receive or no longer have your Settlement Check, you should contact the Settlement Administrator at [insert email] to request a replacement check.

If you have any questions, you may contact Plaintiffs' Counsel, Courtney Hinkle at Outten & Golden LLP at smoothstack@outtengolden.com.